IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., a Delaware corporation, and TERCICA, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>INSMED INCORPORATED, a Virginia corporation, and CELTRIX PHARMACEUTICALS, INC., a Delaware corporation,<br><br>    Defendants.<br>_____/ | No. C 04-5429 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFFS' CONDITIONAL MOTION TO AMEND |

    Defendants Insmed Incorporated and Celtrix Pharmaceuticals, Inc. move to dismiss the second cause of action and part of the third cause of action in the second amended complaint (SAC) filed by Plaintiffs Genentech, Inc. and Tercica, Inc. Plaintiffs oppose the motion and conditionally move to amend the SAC. Defendants oppose Plaintiffs' conditional motion to amend. The matters were heard on June 10, 2005. Having considered the parties' papers and oral argument on the motions, the Court DENIES Defendants' motion to dismiss and DENIES as moot Plaintiffs' conditional motion to amend.

BACKGROUND

    The following facts are alleged in Plaintiffs' SAC. Genentech is the sole owner of U.S. Patent Nos. 6,331,414 ('414 patent) and

5,187,151 ('151 patent), and is the co-owner, along with Australian health care provider Central Sydney Health Service (CSHS), of U.S. Patent No. 5,258,287 ('287 patent). Genentech has exclusively licensed all three patents to Tercica. And, under an agreement[1] entered into in 1988, CSHS has transferred all substantial rights in the '287 patent to Genentech. That agreement states, <u>inter alia</u>, that Genentech has accepted an exclusive license to CSHS's "undivided one-half interest in BP53 Patents, to manufacture, have manufactured, use, and sell Patented Products, together with the right to sublicense to others." BP53 is the subject matter of the '287 patent.

In May, 2000, Insmed acquired Celtrix and all of its remaining assets, which included intellectual property, trial data and regulatory findings for a drug called SomatoKine. In June, 2003, Insmed began clinical trials in which it used SomatoKine to treat Growth Hormone Insensitivity Syndrome (GHIS).

Avecia Limited is currently manufacturing the formulated drug substance of SomatoKine in Great Britain, and is shipping the drug substance to Insmed. Insmed is storing the drug substance in the United States in preparation for packaging and selling SomatoKine. In producing the drug substance of SomatoKine, Avecia Limited is using processes that, if they were performed in the United States, would infringe the '414 and '287 patents.

On December 17, 2004, Tercica sent a letter to Insmed which

---

[1] The agreement is cited and incorporated by reference in the SAC, and is attached as an appendix to Plaintiffs' opposition papers.

2

stated that making, selling or using SomatoKine in the United States would infringe the '414, '287 and '151 patents. On December 21, Insmed issued a press release in which it stated its intention to file a new drug application with the Food and Drug Administration (FDA) for the treatment of GHIS with SomatoKine. And, Insmed has acquired a manufacturing facility in Colorado which will be used for the commercial manufacture of SomatoKine.

On December 23, 2004, Plaintiffs filed their initial complaint against Insmed. On February 16, 2005, Plaintiffs filed an amended complaint and, on April 15, the Court granted in part a motion to dismiss filed by Insmed. On April 22, Plaintiffs filed the SAC against Insmed and Celtrix. The SAC alleges the following causes of action: (1) infringement of the '151 patent against both Defendants, (2) infringement of the '287 patent against both Defendants, and (3) declaratory judgment of infringement of the '414, '287 and '151 patents against Insmed. According to the SAC, the FDA will rule on Insmed's new drug application for SomatoKine sometime after July 3, 2005. On May 6, 2005, Defendants filed this motion to dismiss the second cause of action and part of the third cause of action in the SAC. Plaintiffs filed their conditional motion to amend on May 13; if the Court should grant Defendants' motion to dismiss, Plaintiffs move to amend the SAC to add CSHS as an involuntary Plaintiff.

LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e). These rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

DISCUSSION

I.   Motion to Dismiss

Defendants argue that the second cause of action must be dismissed because CSHS is an owner of the '287 patent but has declined to join this lawsuit. For the same reason, Defendants assert that the portion of the third cause of action that seeks declaratory judgment of infringement of the '287 patent should also be dismissed.

Generally, where a patent has multiple owners, all owners must join in any suit to enforce the patent. See Waterman v. Mackenzie, 138 U.S. 252, 255 (1891). However, there is an exception to the general rule: "where the patentee makes an assignment of all substantial rights under the patent," the assignee has standing to enforce the patent in its own name. Prima Tek II, LLC v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000).

4

Defendants first assert that the licensing agreement between Genentech and CSHS does not confer upon Genentech all substantial rights in the '287 patent because CSHS has retained the right to enforce the patent. Under the agreement, although Genentech is granted the initial exclusive right to sue for infringement of the '287 patent,

> [i]f within six (6) months from the date on which Genentech is notified or otherwise becomes aware of an infringing sale of a product covered by the BP53 Patents, Genentech has not either terminated such infringement, abated such infringement by granting a sublicense in a manner consistent with the provisions of this Agreement, or initiated legal action against the infringer, it will, upon request of [CSHS], grant [CSHS] the right to prosecute an action against that infringer based upon BP53 Patents.

Defendants cite Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1132-33 (Fed. Cir. 1995), in which the court ruled that a limited retained right to sue, and other retained rights, "are the sort that are commonly held sufficient to make a patent owner who grants an exclusive license a necessary party to an infringement action brought by the licensee." However, in Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1251 (Fed. Cir. 2000), the Federal Circuit noted that the agreement at issue in Abbott was subject to eight prior licenses, and the licensor had retained a limited right to make, use and sell products embodying the patent. The Speedplay court ruled that, in the case before it, for practical purposes, the licensor's retained limited right to sue "would not hinder Speedplay's enjoyment of the patent rights in any meaningful way." 211 F.3d at 1251.

Here, the agreement at issue is more similar to the agreement in Speedplay than it is to the agreement in Abbott; there are no

5

prior licenses, and CSHS may not make, use or sell any product embodying the '287 patent. Moreover, the "policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer." Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 875 (Fed. Cir. 1991). As Plaintiffs note, under this agreement, CSHS has no authority to bring a lawsuit against Defendants to enforce the '287 patent because Genentech has already exercised its initial exclusive right to sue.

In addition, under the agreement at issue here, CSHS did not actually retain a right to sue to enforce the '287 patent because, in the event that Genentech did not enforce the patent within six months of becoming aware of infringing activity, CSHS would have had to request from Genentech the right to prosecute an action against the infringer. In other words, pursuant to the agreement, the right to sue is exclusively held by Genentech, even if it had decided not to enforce the '287 patent. In Abbott, the right to enforce the two patents at issue in that case automatically shifted to the licensor if, after six months, the licensee did not seek to enforce the patents. 47 F.3d at 1129.

Defendants also argue that Genentech did not receive all substantial rights to the '287 patent because it cannot freely transfer the rights it received from CSHS. In support of this argument, Defendants cite section 8 of the agreement, which states that Genentech may not assign rights or obligations it received from CSHS without CSHS's written consent, although it may freely

6

grant sublicenses. Defendants cite <u>Intellectual Prop. Dev., Inc. v. TCI Cablevision</u>, 248 F.3d 1333, 1345 (Fed. Cir. 2001), in which the court ruled "that limits on a transferee's assignment rights weigh in favor of finding that an agreement constitutes a transfer of fewer than all substantial rights in a patent."

However, as Plaintiffs note, section 8 does allow Genentech to freely assign, without consent, its rights and obligations "as part of the sale or transfer of its business relating to BP53." And, Genentech is free to grant sublicenses, which the SAC alleges it has done in this case. Thus, Genentech's ability to transfer its rights and obligations with respect to the '287 patent is not materially limited. <u>Speedplay</u> and <u>Vaupel</u> provide further support for Plaintiffs' argument. In <u>Speedplay</u>, the Federal Circuit ruled that a consent requirement similar to the provision in this case did not constitute a substantial right retained by the licensor. 211 F.3d at 1251-52. And, in <u>Vaupel</u>, the Federal Circuit ruled that a licensor's right to veto sublicenses amounted only to "a minor derogation in the grant of rights." 944 F.2d at 875.

The parties agree that analysis, under Federal Rule of Civil Procedure 19, of whether CSHS must be joined as a necessary party is not required.

For the foregoing reasons, the agreement at issue here transferred all substantial rights in the '287 patent to Genentech; thus, the company may enforce the patent without joining CSHS as a plaintiff.

II. Conditional Motion to Amend

Plaintiffs acknowledge that their conditional motion to amend

7

1  to add CSHS as an involuntary Plaintiff would only be considered if
2  the Court were to grant Defendants' motion to dismiss.  Because the
3  Court must deny Defendants' motion to dismiss, Plaintiffs'
4  conditional motion to amend is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the second cause of action and part of the third cause of action in the SAC (Docket No. 48) is DENIED, and Plaintiffs' conditional motion to amend the SAC (Docket No. 52) is DENIED as moot.

IT IS SO ORDERED.

Dated: JUN 29 2005

CLAUDIA WILKEN
United States District Judge