UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., *et al.* <br><br>     Plaintiffs, <br><br>   v. <br><br> INSMED INCORPORATED, *et al.* <br><br>     Defendants. <br> _____/ <br><br> AND RELATED COUNTERCLAIMS. <br> _____/ | No. C-04-5429 CW (EMC) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS FOR *IN CAMERA* REVIEW** <br><br> **(Docket No. 270)** |

## I. INTRODUCTION

Defendants Insmed Inc., Celtrix Pharmaceutical, Inc., and Insmed Therapeutic Proteins, Inc. (collectively "Insmed") have moved to compel Plaintiff Genentech, Inc. ("Genentech") to produce documents related to its U.S. Patent No. 5,187,151 ("'151 patent"), for *in camera* review and for production. Defendant Insmed claims that the documents at issue are not protected by the attorney-client privilege because Plaintiff Genentech has waived the privilege by implied waiver. This Court heard Insmed's motion February 8, 2006. Having reviewed and considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, and good cause appearing therefor, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion to compel documents for *in camera* review.

## II. BACKGROUND

Genentech has sued Insmed for patent infringement. As one defense in this action, Insmed alleges that the '151 patent is unenforceable due to inequitable conduct before the U.S. Patent and Trademark Office ("PTO"). Insmed Supp. Mot. at 1:18. Specifically, Insmed alleges that Genentech inventors Dr. Ross Clark and Dr. Venkat Mukku, and prosecuting attorney Janet Hasak, engaged in inequitable conduct by failing to disclose certain abstracts constituting material prior art to the PTO and that these abstracts contradicted statements made in the specifications of the '151 patent or during its prosecution. Insmed Supp. Mot. at 2:20.

More specifically, Insmed contends that both Dr. Clark and Dr. Mukku, at one point prior to the issuance of the '151 patent, had received a copy of an abstract written by Christopher A. Maack, entitled, *Insulin-Like Growth Factor Binding Protein-3 Potentiates The Effect of IGF-I in Rat and Pig Wound Healing Models* ("the Maack Abstract") and another abstract written by Andreas Sommer, entitled, *Molecular Genetics and Actions of Recombinant IGFBP-3* ("the Sommer Abstract"), both of which allegedly contained the description of experiments and data concerning Biogrowth wound healing experiments. Insmed Supp. Mot. at 3:8, 3:18, 4:1 and 5:1. Insmed also contends that experiments reported in *Growth Regulation* were material but not disclosed to the PTO.

In this motion, Insmed seeks to have the documents in question produced for *in camera* review because they allegedly contain information and/or notations that indicate Genentech's prior knowledge of the Maack and Sommer Abstracts and the *Growth Regulation* experiment and that Genentech has purportedly waived its attorney-client privilege by placing their alleged knowledge of the prior art at issue through deposition testimony. Specifically, Insmed believes that document GTI 0190023351-52 contains information that proves that Dr. Clark was the source of information concerning Biogrowth wound healing work found in the specification and that both Dr. Clark and Dr. Hasak were aware of the materiality of Biogrowth wound healing work not disclosed to the PTO. Insmed Supp. Mot. at 7:24. Insmed alleges that document GTI 0190023311-23 should be reviewed *in camera* because it is a version of the *Growth Regulation* paper which contains notations in the margins of the paper at points where experimental results that are pertinent to the inequitable

1  conduct defense are discussed. Insmed Supp. Mot. at 8:9. Finally, Insmed requests the production
2  of documents GTIP 0190009067, GTIP 00190009082, and GTIP 00190009092, on the grounds that
3  Genentech has identified these documents as correspondence between the inventors Drs. Clark and
4  Mukku and the attorney prosecuting the '151 patent application, Ms. Hasak, before the '151 patent
5  issued. Insmed Supp. Mot. at 11:25.

### III.    PROCEDURAL BACKGROUND

Both Insmed and Genentech have produced thousands of pages and logged thousands of privileged documents. Insmed has also deposed Dr. Clark, Dr. Mukku, and Ms. Hasak, questioning them, in relevant part, on their knowledge of the prior art at issue. It is during these depositions that Insmed claims Genentech's witnesses placed their state of mind into this controversy, thereby waiving the attorney-client privilege for documents that might show their knowledge of the materiality of the prior art.

### IV.    DISCUSSION

Insmed asserts that it is entitled to the documents in question because Dr. Clark placed his state of mind in question when he denied knowledge of who wrote a paragraph in the specification that related to Biogrowth wound healing. Insmed Supp. Mot. at 7-8:14. Moreover, Insmed alleges that Dr. Clark's testimony where he denies any recollection of the Biogrowth wound healing studies gives the impression that Genentech will use such testimony to defend against the inequitable conduct claim. Insmed Supp. Mot. at 10:25. Accordingly, Insmed claims that Genentech should not be able to present exculpatory testimony about its witnesses' state of mind without providing nonprivileged evidence to substantiate its claim or producing the privileged communications as evidence. Insmed Reply in Supp. at 1:10.

In its defense, Genentech argues that they have protected their attorney-client privileges scrupulously. Genentech Opp. at 2. More importantly, Genentech contends that their witnesses' testimony did not constitute the "affirmative acts" necessary for an implied waiver of privilege. Genentech Opp. at 9. Genentech does not challenge the fact that its witnesses denied recollection of certain documents or knowledge at the time of the patent prosecution. Genentech Opp. at 12:8. But

1  Genentech maintains that such denials are insufficient to support a claim of waiver.  Genentech Opp.
2  at 12:10.

### A.  Implied Waiver of the Attorney-Client Privilege

An implied waiver of the privilege occurs if "(1) the party asserting the privilege acts affirmatively (2) to place the privileged communication in issue between the party seeking discovery and itself (3) such that denying access to the communication becomes manifestly unfair to the party seeking discovery." *Laser Industries, LTD v. Reliant Technologies, Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996).

The context of the asserted implied waiver in the case at bar differs from the usual paradigm. Typically, the holder of the privilege resisting waiver voluntarily injects the content of the privileged communication into the suit by affirmatively asserting *e.g.*, advice of counsel to establish non-wilfulness.  In this context however, the issue of inequitable conduct which is likely to raise the question of the patentees' knowledge is asserted by the defendant -- the party *asserting*, not resisting, waiver.  The danger, if the implied waiver doctrine is not applied cautiously, is that the party asserting waiver could unilaterally effect that waiver through its pleading strategy.  On the other hand, where there is a basis for the assertion and the patentee disclaims knowledge of the prior art in answer to the inequitable conduct claim, there is a risk of unfairness to the defendant if the defendant is denied the means to test the factual basis of that denial.

A number of district courts have addressed the issue in the context of an assertion of inequitable conduct or fraud on the PTO.  The courts appear to be in agreement with the general proposition that "mere denial of intent, without more, is insufficient to constitute waiver." *Starsight Telecast, Inc. v. Gemstar Development Corp.*, 158 F.R.D. 650, 653 (N.D. Cal. 1994); *Laser Industries*, 167 F.R.D. at 446.  What constitutes the "more" that is sufficient to constitute a waiver is less clear.  In *Starsight*, the court held "When the state of mind is an issue in a case, a party should not be permitted to testify about its state of mind at the time alleged privileged communications occurred, without pointing to nonprivileged evidence to substantiate its claim or allowing the opposition to discover the privileged communications themselves." *Starsight*, 158 F.R.D. at 653, (citing *General Electric Co. v. Hoechst Celanese Corp.*, 15 U.S.P.Q.2d. (BNA) 1673, 1676 (D. Del.

4

1990).  In *Starsight*, the court found that the inventor and his patent attorney made affirmative representations in their declarations that all prior art about which they were aware had been disclosed to the PTO.  They further testified in deposition that the subject prior art was not material.  158 F.R.D. at 654.  The court concluded that the defendants had "done more than merely deny Starsight's charge of inequitable conduct" and thus partially waived their attorney-client privilege thereby warranting *in camera* review.  *Id.*

In *General Electric Co.*, 15 U.S.P.Q.2d. (BNA) at 1673, the court found that GE had implicitly waived its privilege when GE offered the testimony of an inventor and attorney, both of whom denied any recollection of the prior art.  *Id.* at 1676.  GE's counsel also volunteered, "Had I remembered this letter . . . I probably would not have called it to the attention of the Patent Office because I considered this to be irrelevant to the GE patent during reexamination."  *Id.*  The inventor also asserted the prior art was different.  GE contended this disproved the assertion of fraud on the PTO.  *Id.*  The court concluded:

> Yet GE points to no evidence, other than the allegedly privileged communications themselves, which would substantiate these claims.
>
> The only way for defendants to refuse these assertions is to examine the privileged communications themselves.  In light of GE's affirmative representations regarding Borman and Mufatti's state of mind, and in light of the record reflecting contemporaneous communications between Broman and Mufatti, fairness requires that defendants be allowed to uncover the foundation for GE's assertion.

*Id.* at 1679-80.  The court found a limited waiver sufficient to conduct an *in camera* review.

In *Laser*, the defendant asserted the plaintiff perpetrated fraud on the PTO by failing to disclose one of its own previous patents and prior art.  The attorney who prosecuted the patent submitted a declaration stating he never engaged in fraud or inequitable conduct before the PTO and had no knowledge of the prior patent or prior art related to it.  167 F.R.D. at 446.  Another attorney submitted a similar declaration.  *Id.*  The declarations also contained arguments about the materiality of the prior art.  *Id.* at 447.  The court found no waiver of the privilege.  It found the denials did not purport to disclose the contents of a specific communication nor did they place the contents of any such communication at issue.  *Id.*  It noted courts "are less likely to find waiver when the statements alleged to constitute waiver do not purport to disclose the contents of a specific communication, and

when the statements are pre-trial matters, not evidence." *Laser*, 167 F.R.D. at 446. Nor, according to the court, did the plaintiff place the attorney's state of mind in issue. The court did note, however, that if the attorneys were to testify at trial about their knowledge of prior art at the time of the patent prosecution, fairness would require plaintiff to disclose any confidential communications which may verify or disprove the truth of such statements. *Id.*

Importantly, the defendant did not seek an *in camera* review, but rather sought outright disclosure. The court thus distinguished its analysis from the "less stringent analysis" applicable under *United States v. Zolin*, 491 U.S. 554, 572 (1989) wherein the court must: (1) determine whether the party seeking *in camera* review has made a threshold showing of a good faith belief that the impetus may reveal evidence to establish the defense claim, and (2) if such a showing is made, whether to exercise the court's discretion to conduct the *in camera* review based on a number of factors (including volume of materials, relative importance to the case, and likelihood of establishing the defense claim). *Id.* at 420 n.3.

In *Derrick Manufacturing Corp. v. Southwestern Wine Cloth, Inc.*, 934 F. Supp. 813, 816-17 (S.D. Tex. 1996), the accused infringer claimed the plaintiff engaged in fraud on the PTO and inequitable conduct by failing to disclose prior art. The court refused to find a waiver. It rejected defendants' argument that plaintiff had put its representatives' state of mind at issue when its principal testified that he had no recollection of any discussion with patent counsel regarding disclosure of prior art, the duty to disclose it, or the meaning of prior art. Distinguishing *Starsight* and *General Electric*, the court concluded these were mere denials and that there was no affirmative reliance on counsel's advice. Significantly, the defendant in *Derrick* sought disclosure of the patent attorney's affidavit, not *in camera* review.

At first blush, these cases are difficult to reconcile. The gist of the testimony in each was a denial of wrongdoing including denial of knowledge that any prior art was withheld from the PTO. In *Starsight*, *General Electric*, and *Laser*, there was some assertion that the prior art was immaterial. While there was some reference to the inventor's communication with patent counsel in *Starsight* (declaring he provided all material prior art about which he was aware to counsel), there was no such testimony in *General Electric*. The denial of recollection in *General Electric* were less

affirmative than the assertions in *Starsight*, *Laser*, and *Derrick*. It is difficult to discern how the testimony and declarations in *Starsight* and *General Electric* placed the patentee's state of mind or contents of a specific privileged communication any more at issue than in *Laser* and *Derrick*. Yet, waiver was found in *Starsight* and *General Electric*, but not in *Laser* and *Derrick*. The line between what constitutes "a mere denial of intent" (*General Electric*, 1990 U.S. Dist. LEXIS 14106 at *22) and a substantiated denial sufficient to constitute an implied waiver appears illusive.

In trying to discern a guidepost from the precedent discussed above, it appears that the key to these cases lies in the fact that *in camera* review was sought in *General Electric* and *Starsight* but not in *Laser* and *Derrick*. As Judge Brazil pointed out in *Laser*, where *in camera* review rather that outright disclosure is sought, a less stringent standard under *Zolin* applies. Application of a less stringent standard is appropriate because *in camera* review provides a significant procedural safeguard of the privilege. The privilege is maintained unless the opponent of the privilege makes a satisfactory threshold showing, and the court concludes *in camera* review is warranted after considering a number of factors identified in *Zolin*. If actual production is ordered following *in camera* review, it is narrowly tailored as the waiver is "narrowly construed." *Starsight*, 158 F.R.D. at 655. While the Court still must apply the general principle that no waiver may be found unless the holder presents something more than a "mere denial of intent" even where *in camera* review is sought, the results in *Starsight* and *General Electric* suggest that the "more" need not be as substantial as when outright disclosure is sought.

In the case at bar, Insmed seeks *in camera* review. Thus a less stringent showing is required. In the present case, Insmed relies on the following statements of Dr. Clark's deposition as a basis for a finding of waiver:

After showing Dr. Clark an abstract book, Insmed's counsel asked:

Q. But this particular abstract addresses the effect of BP-3 on the effects of IGF-I; is that correct?

A. This abstract studies wound healing in rats and pigs.

7

1 Q. Yes, and in particular, the effect of BP-3 in potentiating the effect of IGF-I in such
2     wound healing; correct?
3 A. But I was not interested in wound healing at this point in my career.
4 Q. Are you familiar with the Shilling-Hunt rat model . . .
5 A. No, I'm not familiar with this model.  As I said I have never studied wound healing.

7 Dr. Clark was then asked a series of questions to determine his understanding of what was
8 reported in the abstract as to effect of IGF-I alone as compared to a complex of IGF-I and
9 IGFBP-3 on rat wound healing.  In a series of answers, Dr. Clark responded:
10 A. As I said, I've never studied wound healing, so to understand whether this was a real
11     effect which did affect wound healing, I would have to read many documents and
12     familiarize myself with wound healing . . . That's outside my area of expertise.  I'm
13     sorry.
14     . . .
15 A. So I'll answer the question again in that I'm not familiar with wound healing, which
16     is a completely different field than I've worked in . . . I'm sorry.  I can't help you
17     about -- make any judgment on this document, as I don't understand the area.

19 Shatzer Decl. Ex. 5 at 159-63.  Thus, with respect to the abstract, Dr. Clark essentially asserts lack
20 of knowledge because the abstract was not, in his view, within or material to his expertise.

22     After showing Dr. Clark the '151 patent, Insmed's counsel asked:
23 Q. The paragraph that beings at Line 43, do you know who rote [sic] that paragraph in
24     the specification?
25 A. No.  I've got no knowledge of who wrote that.

27 Shatzer Decl. Ex. 5 at 194.

1   Q. Who else involved with the patent application, other than you, do you believe might
2      have been the source of this information that's in this paragraph?
3   A. Anybody else who had something to do with drafting the application.
4   Q. Who were the people that might include aside from yourself?
5   A. Jan Hasak, the patent lawyer who drafted it, and it appears that there were marking on
6      other copies possibly from a third party, so there could have been multiple people that
7      had found these documents and included them in the patent. But these ones, they're
8      the type of reference that I would be highly unlikely to know about or have asource to
9      since I believe back in those times, there was no electronic access to patents.

Shatzer Decl. Ex. 5 at 196-97.

On a separate occasion Dr. Clark was asked if he recalled providing Ms. Hasak any documents prior to the filing of the application for the '151 patent. Dr. Clark answered:

A. I don't recall. It's 15 years ago. I don't recall specific incidences of supplying
   documents to Janet Hasak, no.

Shatzer Decl. Ex. 5 at 174. In essence, Dr. Clark testified he had no knowledge as to who was responsible for the allegedly false specification and could not recall having provided any documents to patent counsel.

While Dr. Clark does not make an affirmative representation that he provided all material information to counsel as in *Starsight*, his testimony as to his lack of recollection of the prior art is similar in nature to the testimony in *General Electric*. Although Dr. Clark does not expressly address materiality of the prior art, his testimony that it concerned a different field seems to imply as much. Perhaps more to the point Dr. Clark implies that even if the prior art had been in his possession, he would have disregarded it as outside his field. Arguably, Dr. Clark's testimony implies more than a lack of recollection; it suggests something more affirmative about his state of mind -- the likelihood that if he saw the prior art, he would have ignored it.

9

1 Dr. Clark's testimony about his likely state of mind and the fact that he would have
2 considered the subject prior art irrelevant provides something more specific than mere denial of
3 intent. It is at least sufficient to trigger an inquiry into the appropriateness of *in camera* review
4 under *Zolin*. Applying the *Zolin* test, the Court concludes that documents GTI 0190023351-52 and
5 GTI 0190023311-23 should be produced for *in camera* review. Insmed has made a threshold
6 showing there is "'a factual basis adequate to support a good faith belief by a reasonable person' that
7 *in camera* review of the materials may reveal evidence to establish the claim" of inequitable
8 conduct. *Laser*, 167 F.R.D. at 420 n.3 (quoting *Zolin*). Through inadvertent disclosure, Insmed's
9 counsel saw GTI 0190023351-52 and believe it was material to the issue of Dr. Clark's knowledge
10 and involvement in drafting the specification at issue. GTI 0190023311-23 contains margin notes
11 where the alleged prior art is discussed.[1]

12 Having found the threshold showing is established, the Court exercises its discretion under
13 *Zolin* to review these two documents *in camera*. The volume of the documents -- two -- is
14 manageable. The documents could be important; if they contain information probative to Dr.
15 Clark's knowledge, they would be relevant to the defense of inequitable conduct, a defense which
16 could defeat successful prosecution of this case. Given Dr. Clark's lack of recollection,
17 contemporaneous or other documentation probative to his state of mind could prove critical to the
18 case. Although it is too early to tell with any degree of confidence, there is at least a chance that the
19 defense of inequitable conduct could be established. Thus, the *Zolin* factors support an *in camera*
20 review. *Laser*, 167 F.R.D. at 420 n.3 (quoting *Zolin*).
21 ///
22 ///
23 ///
24 ///
25 ///

---

[1] Genentech asserts the margin notes were those of litigation counsel and have nothing to do with Dr. Clark's state of mind at the time of patent prosecution. Genentech may submit under seal a declaration explaining both these documents and their contexts. The Court will consider any such evidence in determining whether upon *in camera* review disclosure is appropriate.

## V. **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion to compel documents for *in camera* review. The unredacted documents (and any supporting declaration(s)) should be filed under seal (and a copy lodged with chambers) no later than February 28, 2006.

IT IS SO ORDERED.

Dated: February 23, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

11