March 10, 2006

*Via Facsimile and Hand Delivery*

The Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:** *Genentech, Inc. and Tercica, Inc. v. Insmed Incorporated, Celtrix Pharmaceuticals, Inc., and Insmed Therapeutic Proteins*, No. C-04-5429 CW (N.D. Cal.)

Dear Judge Chen:

  The parties have met and conferred regarding Plaintiffs' pending motion to strike the Supplemental Rebuttal Expert Report of Christopher A. Maack ("March 1 Maack Report"). The meet and confer took place on March 9, 2006, with the participation of Ethan C. Glass, representing Plaintiff Genentech, Inc., William G. Gaede, representing Plaintiff Tercica, Inc., and Larry L. Shatzer, representing Defendants Insmed Incorporated, Celtrix Pharmaceuticals, Inc., and Insmed Therapeutic Proteins, Inc. The meet and confer was by telephone (because Mr. Shatzer is located in Washington, DC) and lasted approximately 15 minutes in total.

  The parties were not able to reach agreement on the dispute.

  **Plaintiffs' Position:** The March 1 Maack Report is untimely and it unfairly prejudices Plaintiffs. *See* Motion to Strike (Docket # 311) at 7:1-10:24.[1]

  The Court's expert report deadline was February 24, 2006. On March 1, 2006, Defendants sent the March 1 Maack Report to Plaintiffs' counsel by email, claiming that it "supplements" Dr. Maack's timely served Rebuttal Expert Report. The March 1 Maack Report, however, is not a Rule 26(e) supplementation because it does not correct inaccuracies — instead *it adds new opinions* — and it is not based on new information within the meaning of Rule 26(e). *See Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (rejecting a late expert report that did not correct inaccuracies and was not based on new information). *See also* Motion to Strike at 7:1-10:24. In fact, Defendants possessed all information addressed in Dr. Maack's untimely March 1 Report well before the lapse of the court-ordered deadline. These facts distinguish this dispute from the circumstances addressed in the authorities Defendants cite — none of which are from courts in this Circuit, which, under the *Keener* test, do not solely consider prejudice — where the supplemental reports corrected

---

[1] In light of Defendants' lengthy explication, Plaintiffs incorporate herein the Motion to Strike.

inaccuracies, were based on new information, or the objecting party acquiesced to the supplemental report (either expressly or by silence).[2]

Importantly, Defendants do not contest that they have failed to comply with Judge Wilken's orders or Rule 26(e). Instead, Defendants spend an inordinate amount of space below incorrectly trying to shift the blame for their own missing of the deadline. First, Plaintiffs timely served their expert reports showing the infringing hybridization; despite Defendants' implications, Plaintiffs were under no obligation to inform them of these experiments before then. Second, the "important information" allegedly missing from Plaintiffs' expert reports was minor back up data that should not have delayed Defendants' experiments in any way. *See* Declaration of Cora Schmid (Docket # 312). In fact, Defendants still were able to timely serve Todd Parsley's expert report related to those experiments and Defendants never approached Plaintiffs for an extension. And third, Defendants' expert document production (including Dr. Parsley's laboratory notebooks) explains why the Maack report was late. Those documents show that Dr. Parsley was working on his experiments for months, but as Defendants admit below, because of errors in Dr. Parsley's experiments, he did not complete his work until February 24, which is the sole explanation why Dr. Maack's report was late — the delay was not due to anything Plaintiffs did or did not do, but due to errors in Dr. Parsley's approach and due to Defendants' own tactical decisions.

Even though not required under *Keener*, Plaintiffs are prejudiced by Defendants' gamesmanship. First, Defendants' untimely submission forced Plaintiffs to respond to late reports when their summary judgment motion and claim construction briefs are due just a few weeks later, disrupting the carefully-timed schedule Judge Wilken set in place. Simultaneously, Plaintiffs are preparing for expert depositions to be completed by March 24, 2006. Thus, not only does Defendants' action upset Judge Wilken's careful timing to have summary judgment and claim construction heard at the same time and in a fair and orderly manner, Plaintiffs will be required to expend time and resources preparing to depose Dr. Maack on his improper supplementation (including having Plaintiffs' experts review and provide analysis on these late opinions) while addressing the extraordinary amount of work for the current phase of this litigation. For example, Plaintiffs' expert Charles Roberts now has to digest the March 1 Maack Report in just a few days (his deposition is scheduled for March 16th). And, even if that were reasonable, Defendants still are producing documents relating to the experiments of Defendant's expert Todd Parsley (mentioned in the March 1 Maack Report). So, even today, Dr. Roberts still cannot fully prepare for his deposition. And finally, Defendants' failure to adhere to the deadlines set by Judge Wilken is unprincipled and violates Plaintiffs' right to rely on those deadlines in preparing their experts and otherwise. Allowing the tardy March 1 Maack Report gives Defendants an unfair procedural advantage: they would receive an additional 5 days to work on their reports (with the insight of our timely served reports). Plaintiffs, however, did not get this additional time because they complied with the Court's orders and the rules.

---

[2] Recognizing their failures and the lack of any Rule 26(e) supplementation grounds, Defendants told Plaintiffs that they would bring to this Court a motion to extend the expert report deadline, so that the late March 1 Maack Report would be deemed timely. Plaintiffs responded that such a motion would be improper under this Court's Civil Local Rules, and subsequently Defendants have indicated that they would not bring such a motion.

Defendants' claim that the prejudice to Plaintiffs can be alleviated by simply rescheduling Dr. Roberts' deposition. But that is impractical considering the current schedule: (1) expert discovery closes on March 24; (2) claim construction briefs and dispositive motions are due on March 31, 2006; and (3) expert depositions are scheduled for every business day left in the expert discovery period except for March 21, 2006, which Plaintiffs already will be using to travel and prepare for the expert witnesses depositions.

Conversely, adhering to Judge Wilken's deadlines would not unduly prejudice Defendants, and, if there even is any prejudice, it is due to Defendants' own delay. Contrary to Defendants' claims below, Dr. Maack's timely February 23, 2006 Report and Dr. Parsley's timely February 24 Report already provide opinions on the pertinent infringement issues (including the comparison between Dr. Parsley's test results and those of Plaintiffs' experts). Thus, the untimely March 1 Maack Report is cumulative on those issues, while also containing inappropriate and untimely new opinions.

Accordingly, Plaintiffs request that the Court strike the March 1 Maack Report.

**Defendants' Position:** Plaintiffs' motion is based upon an overly narrow reading of Fed. R. Civ. P. 26(e) and selective application of a discovery deadline that Plaintiffs have already asked be extended for their own convenience.[3] The motion is not about enforcing the rules, it is about trying to gain an advantage on the merits when Plaintiffs have suffered no prejudice whatsoever.

On January 27, 2006 Plaintiffs served expert reports that revealed for the first time the results of tests which they contend show that the DNA sequence for Insmed's IGFBP-3 hybridizes under the conditions required by claim 1 of U.S. Patent No. 5,258,287 ("the '287 patent"). Important information related to the hybridization experiments performed by Plaintiffs' experts was missing from their reports and was not provided until February 17. The information belatedly produced on February 17, 2006 was critical to understanding the tests that Plaintiffs' experts had conducted and relied upon, and should have been included with their January 27 expert reports. Despite not having critical information related to Plaintiffs' hybridization experiment until February 17th, Defendants timely served the rebuttal expert report of Dr. Christopher Maack on February 24, 2006 addressing, *inter alia*, issues related to the '287 patent. On that same date Defendants also served an expert report from Dr. Todd Parsley related to experiments he had conducted showing that the DNA sequence of Insmed's IGFBP-3 does not hybridize under the conditions set forth in the claims of the '287 patent. Because Defendants felt it was important that Dr. Parsley's experiments be done independently of any other experts, Dr. Maack was not aware of Dr. Parsley's experiments before they were completed. As set forth in Dr. Parsley's expert report, his experiments took longer than expected to complete and were not done until mid-day on February 24. *See* Declaration of W. Gaede, Ex. 3. By that time, Dr. Maack was unavailable to review Dr. Parsley's expert report as he had departed mid-day on February 23 for a planned out of town trip. Accordingly, Dr. Maack had completed his rebuttal expert report on February 23 before he left for his trip without having any information concerning Dr. Parsley's experiments. Even if he had been available, Dr. Maack would not have had sufficient time to review the Parsley data and address it in a rebuttal expert report during the few hours between the completion of the experiments and the expert report deadline.

---

[3] Defendants decided not to move to extend the expert report deadline *nunc pro tunc* in light of the Court's March 8, 2006 Order and not because of any arguments raised by Plaintiffs.

Defendants did not seek to extend the deadline because, until Dr. Maack could review the Parsley expert report, Defendants did not know whether Dr. Maack would need to supplement his own report with any further information. Defendants promptly provided Dr. Maack with the Parsley expert report on Monday, February 27 after his return. Dr. Maack reviewed the report and determined that he should supplement his opinions with respect to what was disclosed in the Parsley expert report and, in particular, to compare the Parsley test results with those of Plaintiffs' expert Ms. Montgomery. In particular, Dr. Maack was addressing data from the Montgomery experiments that was only provided to Defendants on February 17, three weeks after the service of Ms. Montgomery's report and only five business days before the rebuttal expert report deadline. Once it was determined that Dr. Maack should supplement his rebuttal expert report to address this additional information, he promptly prepared a short and concise supplemental expert report and it was served on Plaintiffs on March 1, three business days after the February 24 deadline for rebuttal reports.

Under Fed. R. Civ. P. 26(e), Dr. Maack should supplement his report if he "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Plaintiffs have conceded that Dr. Maack's supplemental report expands upon the information provided in the reports served three business days earlier. *See* Plaintiffs' Motion at 3. Because this information, including additional bases for Dr. Maack's earlier disclosed opinions, had not been previously made available to Plaintiffs, Rule 26(e) requires Dr. Maack to provide a supplemental report.

Even if Dr. Maack's report were not deemed to be a supplemental report under Fed. R. Civ. P. 26(e), it should not be excluded as a sanction because it was three days late. Federal. R. Civ. P. 37(c)(1), under which Plaintiffs have filed their motion, provides that there should be no sanction if the "failure is harmless." Moreover, "[e]xclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side." *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000) (citing *Wend v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997). The preclusion sanction should not be imposed when a party's failure to comply with a discovery order is due to inability and not willfulness or bad faith. *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). Plaintiffs' motion does not even begin to satisfy the criteria for exclusion of evidence.

"The touchstone for determining whether to exclude the untimely expert report is whether the party opposing their admission is prejudiced." *Lore v. City of Syracuse,* 2005 WL 3095506 (N.D. N.Y., Nov. 17, 2005) at * 4 (*citing, In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 791 (3d Cir. 1994)). Serving Dr. Maack's report just three business days after the deadline – but more than two weeks before his scheduled expert deposition – did not prejudice Plaintiffs in any way. Moreover, during the meet and confer process Defendants' counsel offered to take steps to ameliorate any prejudice Plaintiffs could articulate. That offer was refused. Plaintiffs' first claim that they have been prejudiced because they "are preparing for expert depositions to be completed by March 24, 2006" (*supra*, p. 2) is disingenuous. Before Dr. Maack's supplemental expert report was served, *Plaintiffs* requested and Defendants agreed to extend the deadline to complete expert depositions from March 24 until April 4. Defendants agreed to this extension because Plaintiffs represented that their counsel, David Larson, would be out of the country during the week of March 20 and would be responsible for taking or defending some of the depositions scheduled for that week. Thus, Plaintiffs apparently consider adhering to the March 24 expert discovery deadline to be a matter of "principle" only when it suits their own convenience.

In any event, Plaintiffs do not (because they cannot) explain how receiving Dr. Maack's supplemental expert report 10 business days before his deposition is prejudicial when they would have received the report only 13 business days before the deposition had it been served on February 24. The ability to depose the expert on the additional opinions will normally alleviate any prejudice. *See Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 483 (D. Minn. 2003); *C.H. Robinson Co. v. Zurich American Ins. Co.*, No. 02-4794, 204 U.S. Dist. LEXIS 15202, at *8 (D. Minn. Aug. 5, 2004); *Seton Co. v. Lear Corp.*, No. 02-71118, 2005 U.S. Dist. LEXIS 8963, at *9-10 (E.D. Mich. May 13, 2005) *Virgin Enters. Ltd. v. American Longevity*, No. 99 Civ. 9854, 2001 U.S. Dist. LEXIS 2048, at *5-7 (S.D.N.Y. Feb. 28, 2001)); *U.S. v. Philip Morris, Inc.*, 223 F.R.D. 1, 9 (D.D.C. 2004).[4] .

Plaintiffs' second claim of prejudice, asserted for the first time during the March 9, 2006 meet and confer, is that their expert, Dr. Charles Roberts, will be prejudiced because the short delay in his receipt of the Maack supplemental report has somehow prevented him from being able to fully prepare for his own deposition scheduled for March 16, 2006. This alleged prejudice, however, can be easily remedied by scheduling Dr. Roberts's deposition for a later date if he truly needs more than two full weeks to consider the limited information in Dr. Maack's supplemental report. Further, because Dr. Maack's supplemental report simply expands upon the bases for the conclusions in his February 24 report, there is no undue prejudice to Plaintiffs' or Dr. Roberts' ability to prepare for his deposition. *See Hockerson-Halberstadt, Inc. v. Saucony, Inc.*, No. 91-1720, 2005 U.S. Dist. LEXIS 11990, at *15-16 (E.D.La May 27, 2005); *see also, Mathers* 217 F.R.D. at 483; *Bell v. Gonzales*, No. 03-163 2005 U.S. Dist. LEXIS 37879, at *54 (D.D.C. Dec. 23, 2005).

Finally, Plaintiffs' asserted for the first time this afternoon, is that the supplemental report somehow affects their ability to prepare their summary judgment motions and claim construction briefs. Nothing in the supplemental report is directed to claim construction issues. Indeed, on January 26, *Plaintiffs* wrote to confirm that they *stipulated to Defendants' claim construction* on the issue concerning the hybridization conditions required by the '287 patent. Further, Plaintiffs' summary judgment motions and claim construction briefs are not due until March 31, 2006 – nearly one month after the supplemental report was served. Plaintiffs have provided no explanation how receiving the supplemental expert report three business days after the deadline has impeded their ability to prepare their summary judgment motions and claim construction briefs.

In contrast to the clear absence of prejudice to Plaintiffs, there could be substantial prejudice to Defendants if Dr. Maack's opinions are excluded. The jury in this case will be faced with three sets of experiments regarding the key issue of whether the DNA sequence of Defendants' IGFBP-3 hybridizes under the conditions required by the '287 patent: One set performed by Defendant Celtrix Pharmaceuticals shortly after the '287 patent issued that shows no hybridization, one set performed by Plaintiffs' expert Ms. Montgomery that Plaintiffs claim shows hybridization, and the experiments of Dr. Parsley that do not show hybridization. The Maack supplemental expert report compares the Montgomery and Parsley test results and goes to the heart of the question of infringement of the '287 patent. It is clearly in the public interest for the jury to have this testimony before them to assist them in determining how much weight, if any, should be afforded the respective test results of the parties.

---

[4] The cases Plaintiffs rely upon are readily distinguishable from the situation presently before the Court. Specifically, unlike in this case, the supplemental expert reports were not offered until *after* the close of expert discovery and *after* the expert had already been deposed.

Accordingly, Defendants request that the Court deny Plaintiffs' request to strike the Maack supplemental expert report.

| Respectfully Submitted, | Respectfully Submitted, | Respectfully Submitted, |
|---|---|---|
| HELLER EHRMAN LLP | MCDERMOTT, WILL & EMERY LLP | FOLEY & LARDNER LLP |
| /s/ Ethan C. Glass | /s/ William G. Gaede | /s/ Larry L. Shatzer |
| Ethan C. Glass | William G. Gaede | Larry L. Shatzer |
| Attorneys for Plaintiff | Attorneys for Plaintiff | Attorneys for Defendants |
| GENENTECH, INC. | TERCICA, INC. | INSMED INCORPORATED, CELTRIX PHARMACEUTICALS, INC., AND INSMED THERAPEUTIC PROTEINS, INC. |

I hereby attest that I have been authorized by William G. Gaede and Larry L. Shatzer to execute on their behalf this Joint Letter.

Executed this 10th day of March, 2006 at San Francisco, California.

/s/ Ethan C. Glass
Ethan C. Glass