IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC. a Delaware Corporation, TERCICA, INC., a Delaware Corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>INSMED INCORPORATED, a Virginia Corporation, CELTRIX PHARMACEUTICALS, INC., a Delaware Corporation, and INSMED THERAPEUTIC PROTEINS, a Colorado Corporation,<br><br>    Defendants.<br>_____/ | No. 04-5429 CW<br><br>ORDER SUSTAINING PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S MARCH 9, 2006 ORDER |

Plaintiff Genentech, Inc.[1] objects to the Magistrate Judge's February 23, 2006 Order Granting in Part and Denying in Part Defendants' Motion to Compel Documents for In Camera Review (February 23, 2006 Order), which directed Plaintiff to produce for in camera review two documents that were protected by the attorney-client privilege, and the Magistrate Judge's March 9, 2006 Order Re Plaintiff's Motion for Leave to File a Motion for Reconsideration (March 9, 2006 Order), which denied Plaintiff's motion for

---

[1] Plaintiff Tercica, Inc. does not join in the objection.

reconsideration and ordered production of a portion of one of the privileged documents. Defendants oppose the objection. The matter was taken under submission. Having read all the papers, the Court sustains Plaintiff's objection and overrules the Magistrate Judge's order for the production of a privileged document.

## BACKGROUND

Genentech sued Defendants for patent infringement. As one defense, Defendants alleged that the patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office (PTO) during patent prosecution. Specifically, Defendants alleged that Genentech inventors Dr. Ross Clark and Dr. Venkat Mukku and prosecuting attorney Janet Hasak purposely withheld from the PTO information about two scientific abstracts that constituted material prior art and that these abstracts contradicted statements made in the specification of the patent or during its prosecution. Defendants filed a motion for production of documents, which was heard by a Magistrate Judge. In their motion, Defendants asserted that they were entitled to certain privileged documents because Dr. Clark impliedly waived the attorney-client privilege by placing his state of mind in issue when, during his deposition, he denied knowing who wrote a paragraph in the patent specification that related to wound healing.

The relevant deposition testimony, as summarized in the Magistrate Judge's February 23, 2006 Order at 8-9, is as follows:

> Dr. Clark was then asked a series of questions to determine his understanding of what was reported in [one of the abstracts regarding] rat wound healing. In a series of answers, Dr. Clark responded:

2

> A. As I said, I've never studied wound healing, so to understand whether this was a real effect which did affect wound healing, I would have to read many documents and familiarize myself with wound healing . . . That's outside my area of expertise. I'm sorry . . .
>
> A. So I'll answer the question again in that I'm not familiar with wound healing, which is a completely different field than I've worked in . . . I'm sorry. I can't help you about -- make any judgment on this document, as I don't understand the area.

Thus, with respect to the abstract, Dr. Clark essentially asserts lack of knowledge because the abstract was not, in his view, within or material to his expertise.

After showing Dr. Clark the '151 patent, Insmed's counsel asked:

> Q. The paragraph that beings [sic] at Line 43, do you know who rote [sic] that paragraph in the specification?
>
> A. No. I've got no knowledge of who wrote that.
>
> Q. Who else involved with the patent application, other than you, do you believe might have been the source of this information that's in this paragraph?
>
> A. Anybody else who had something to do with drafting the application.
>
> Q. Who were the people that might include aside from yourself?
>
> A. Jan Hasak, the patent lawyer who drafted it, and it appears that there were marking [sic] on other copies possibly from a third party, so there could have been multiple people that had found these documents and included them in the patent. But these ones, they're the type of reference that I would be highly unlikely to know about or have asource [sic] to since I believe back in those times, there was no electronic access to patents.

On a separate occasion Dr. Clark was asked if he recalled providing Ms. Hasak any documents prior to the filing of the application for the '151 patent. Dr. Clark answered:

1            A. I don't recall.  It's 15 years ago.  I don't
            recall specific incidences of supplying
2               documents to Janet Hasak, no.

3   February 23, 2006 Order at 8-9.

4                            LEGAL STANDARD

5      A magistrate judge's order on a non-dispositive pre-trial

6   matter shall be modified or set aside only if the reviewing

7   district court finds that the order is clearly erroneous or

8   contrary to law.  Fed. R. Civ. P. 72(a).  An order is clearly

9   erroneous when, "although there is evidence to support it, the

10  reviewing court on the entire evidence is left with the definite

11  and firm conviction that a mistake has been committed."  United

12  States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

13                            DISCUSSION

14  I. Waiver of Attorney Client Privilege

15     An implied waiver of the attorney-client privilege occurs when

16  (1) the party asserts the privilege as a result of an affirmative

17  act, such as filing suit; (2) through the affirmative act, the

18  asserting party puts the privileged information at issue; and

19  (3) allowing the privilege would deny the opposing party access to

20  information vital to its defense.  Home Indemnity Co. v. Lane

21  Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir. 1995).  Of

22  paramount importance is whether allowing the privilege to protect

23  against disclosure of the information would be manifestly unfair to

24  the opposing party.  Id.  A plaintiff may put his or her attorney's

25  advice in issue by filing a malpractice action against the lawyer

26  or a defendant may assert reliance on the advice of counsel as an

27  affirmative defense.  Rhone-Poulenc Rorer, Inc. v. Home Indemnity

28                                       4

1  Co, 32 F.3d 851, 863 (3rd Cir. 1994).  "Advice is not in issue
2  merely because it is relevant, and does not necessarily become in
3  issue merely because the attorney's advice might affect the
4  client's state of mind in a relevant manner."  Id.  Waiver is not
5  likely to be found when the statements alleged to constitute waiver
6  do not disclose the contents of a specific communication between
7  client and attorney.  Laser Indus. v. Reliant Technologies, 167
8  F.R.D. 417, 446 (N.D. Cal. 1996).  The mere denial of intent is
9  insufficient to establish waiver of the privilege.  Id.
10 II. Analysis
11     In his deposition testimony, Dr. Clark merely denied knowledge
12 of wound healing and denied remembering what documents he had given
13 his attorney because the events about which he was being questioned
14 occurred over fifteen years ago.  His testimony does not refer to
15 any attorney-client communications.  Dr. Clark's testimony does not
16 waive the attorney-client privilege because he did not put any
17 attorney-client communication in issue nor did he do more than
18 merely deny intent.  This result does not create manifest
19 unfairness to Defendants.  Plaintiff is not planning to offer Dr.
20 Clark's testimony into evidence.  If at trial Plaintiff offers
21 testimony that puts attorney-client communications into issue, it
22 will have to disclose any confidential communications that may
23 verify or disprove the truth of such testimony.
24     The Magistrate Judge correctly cited the above-mentioned legal
25 standard for implied waiver of the attorney-client privilege,
26 focusing on the proposition that "mere denial of intent, without
27 more, is insufficient to constitute waiver."  February 23, 2006

5

Order at 4. The Magistrate Judge then analyzed several cases to determine "what constitutes the 'more' that is sufficient to constitute a waiver." Id. The Magistrate Judge discussed several cases from various district courts which came to different conclusions about whether the privilege was waived. Id. at 4-6. The Magistrate Judge opined that these cases were difficult to reconcile and that "the line between what constitutes 'a mere denial of intent' and a substantiated denial sufficient to constitute an implied waiver appears illusive [sic]." Id. at 7. The Magistrate Judge concluded that

> it appears that the key to these cases lies in the fact that in camera review was sought in General Electric and Starsight but not in Laser and Derrick. As Judge Brazil pointed out in Laser, where in camera review rather that [sic] outright disclosure is sought, a less stringent standard under Zolin applies. Application of a less stringent standard is appropriate because in camera review provides a significant procedural safeguard of the privilege. The privilege is maintained unless the opponent of the privilege makes a satisfactory threshold showing, and the court concludes in camera review is warranted after considering a number of factors identified in Zolin.

Id.

The Magistrate Judge concluded that Dr. Clark's deposition testimony "implies more than a lack of recollection; it suggests something more affirmative about his state of mind -- the likelihood that if he saw the prior art, he would have ignored it." Id. at 9. The Magistrate Judge did not find the privilege waived, but determined that this was sufficient "to trigger an inquiry into the appropriateness of in camera review under Zolin," and concluded that in camera review was warranted. Id. at 10. The Magistrate Judge reviewed the documents in camera.

6

1   Then, in his March 9, 2006 Order, the Magistrate Judge ordered
2   the production of two paragraphs in one of the documents he
3   reviewed in camera.  March 9, 2006 Order at 1.  The Magistrate
4   Judge did not explicitly discuss his reason for ordering the
5   production of these two paragraphs.  That is, he still did not find
6   that the privilege had been waived.  The Magistrate Judge ordered
7   that the remainder of the first document and all of the second
8   document need not be produced because "the slight probative value,
9   if any, of this document does not justify overcoming the attorney-
10  client privilege," and "the redacted notes appears to have little
11  probative value as to the issues of Dr. Clark's state of mind and
12  knowledge raised by Defendants."  Id. at 1 and 2.
13  United States v. Zolin, 491 U.S. 554, 556 (1989), relied on by
14  the Magistrate Judge for the proposition that a lesser showing is
15  appropriate to justify in camera review of privileged material,
16  addressed the crime-fraud exception to the attorney-client
17  privilege.  Defendants did not claim a crime-fraud exception to the
18  attorney-client privilege; they claimed waiver.  Zolin did not
19  provide for in camera review of privileged documents to determine
20  waiver of the attorney-client privilege.  Nor did Zolin establish
21  an inequitable conduct exception to the attorney-client privilege.
22  Inequitable conduct is not the same as fraud.  "To invoke the
23  crime-fraud exception, a party challenging the attorney-client
24  privilege must make a prima facie showing that the communication
25  was made in 'furtherance of' a crime or fraud."  In re Spalding,
26  203 F.3d 800, 807 (Fed. Cir. 2000).  Fraud requires findings of (1)
27  a representation of a material fact; (2) the falsity of that

7

representation; (3) the intent to deceive or a state of mind so reckless as to the consequences that it is held to be the equivalent of intent; (4) justifiable reliance upon the misrepresentation by the deceived party which induces the party to act in reliance thereon; and (5) injury to the deceived party as result of that reliance.  Id.  Inequitable conduct is a broader, more inclusive concept than common law fraud; it includes conduct less serious than knowing and willful fraud.  Id.  An omission such as the failure to cite a piece of prior art would support a finding of common law fraud only if it were accompanied by evidence of fraudulent intent; a mere failure to cite a reference to the PTO will not suffice.  Id.

The standard for establishing the crime-fraud exception to the attorney-client privilege is different from the standard required to establish waiver of the attorney-client privilege.  The party asserting the crime-fraud exception must establish a prima facie case that the privileged communication was made in furtherance of a crime or fraud.  This is a threshold question which is hard to answer without knowing the substance of the privileged communication.  Therefore, the showing to obtain in camera review of documents allegedly subject to the crime-fraud exception is less than that necessary to overcome the privilege.  On the other hand, the party asserting waiver of the attorney-client privilege must establish that the opposing party has placed in issue privileged communications with his attorney; a threshold showing that the privileged communications were in furtherance of inequitable conduct is not required.  Thus, in camera review to determine

8

waiver of the privilege would not serve any purpose; examination of the privileged material in camera for its evidentiary value in establishing inequitable conduct would not yield any useful information regarding whether the privilege had been waived in the first place.

Here, after the Magistrate Judge undertook in camera review of the documents without actually finding that the attorney-client privilege had been waived, he then ordered the documents produced, but still did not actually find that the privilege had been waived. This was incorrect. The privilege had not been waived.

## CONCLUSION

Based on the foregoing, the Court sustains Plaintiff's objection to the Magistrate Judge's order (Docket # 337) and overrules the Magistrate Judge's order for disclosure of privileged documents.

6/30/06

Dated

CLAUDIA WILKEN
United States District Judge