1   **FOLEY & LARDNER LLP**
    ATTORNEYS AT LAW
2   1530 PAGE MILL ROAD
    PALO ALTO, CA 94304
    TELEPHONE: (650) 251-1114
3   FAX: (650) 856-3710

4   DAVID B. MOYER, BAR NO. 197739
    dmoyer@foley.com

5   **FOLEY & LARDNER LLP**
    ATTORNEYS AT LAW
    11250 EL CAMINO REAL, SUITE 200
6   SAN DIEGO, CA 92130
    TELEPHONE: (858) 847-6700
    FAX: (858) 792-6773
7
    DOUGLAS H. CARSTEN, BAR NO. 198467
8   dcarsten@foley.com

9   **FOLEY & LARDNER LLP**
    ATTORNEYS AT LAW
    3000 K ST., N.W.
10  WASHINGTON, DC 20007
    TELEPHONE: 202.672.5300
    FACSIMILE: 202.672.5399
11
    LARRY L. SHATZER, *PRO HAC VICE*
12  lshatzer@foley.com
    GEORGE C. BEST, *PRO HAC VICE*
    gbest@foley.com
13
    ATTORNEYS FOR DEFENDANTS, INSMED
14  INCORPORATED, CELTRIX PHARMACEUTICALS,
    INC. AND INSMED THERAPEUTIC PROTEINS, INC.

15                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
16                        OAKLAND DIVISION

16  GENENTECH, INC., a Delaware Corporation, ) Case No. C-04-5429 CW (EMC)
    TERCICA, INC., a Delaware Corporation     )
17                                            ) **DEFENDANTS' OPPOSITION TO**
                     Plaintiffs,              ) **PLAINTIFFS' MOTION ON SCOPE AND**
18                                            ) **PROCEDURE OF WILLFULNESS**
           v.                                 ) **DISCOVERY AND CROSS-MOTION TO**
19                                            ) **QUASH OR LIMIT SCOPE OF**
    INSMED INCORPORATED, a Virginia           ) **SUBPOENAS**
20  Corporation, CELTRIX                      )
    PHARMACEUTICALS, INC., a Delaware         ) Date:      August 3, 2006
21  Corporation, and INSMED THERAPEUTIC       ) Time:      3:00 p.m.
    PROTEINS, INC., a Colorado Corporation    ) Courtroom: C, 15th Floor
22                                            )
                     Defendants.              ) **Honorable Edward M. Chen**
23                                            )
    AND RELATED COUNTERCLAIMS                 )
24                                            )
25                                            )
    _____)
26
27  ///
28

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

I.      STATEMENT OF FACTS ......................................................................................... 3

II.     ARGUMENT ............................................................................................................ 7

        A.      Insmed Has Produced All Documents Within The Scope Of Its Waiver
                And Plaintiffs' Motion Improperly Seeks To Invade Attorney-Client And
                Work Product Protections ........................................................................... 7

        B.      Plaintiffs Are Not Entitled To Discovery Beyond The Documents
                Produced By Defendants On July 17, 2006 .............................................. 15

        C.      Plaintiffs Should Not Be Granted More Than Two Depositions Over The
                Federal Rule And Agreed-Upon Limit of Ten .......................................... 17

                1.      The Five Additional Deposition Request ...................................... 18

                2.      The "Re-Convening" Of The Depositions of Two Additional
                        Witnesses ...................................................................................... 19

        D.      Plaintiff Tercica's Subpoenas To Three Law Firms Should Be Quashed Or
                Substantially Limited .............................................................................. 20

III.    CONCLUSION ...................................................................................................... 23

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                 Pages

3

*Akeva LLC v. Mizuno Corp.,*

4
   243 F. Supp. 2d 418 (M.D.N.C. 2003) ............................................................ 8, 9, 10, 11, 12

5

*Ampex Corp. v. Eastman Kodak Co.,*
   2006 WL 1995140 (D. Del. Jul. 17, 2006) ........................................................... 9, 10

6

*Applied Medical Resources Corp. v. United States Surgical Corp.,*

7
   435 F.3d 1356 (Fed. Cir. 2006)............................................................................... 11

8

*Collaboration Properties, Inc. v. Polycom, Inc.,*

9
   224 F.R.D. 473 (N.D. Cal. 2004).............................................................................. 14

10

*Del Campo v. Kennedy,*

11
   2006 WL1314656 at (N.D. Cal. May 2, 2006) ....................................................... 21

12

*In re EchoStar Communications Corp.,*
   448 F.3d 1294 (Fed. Cir. 2006)............................... 1, 2, 5, 7, 8, 9, 10, 11, 14, 20, 22

13

*Indiana Mills & Manufacturing, Inc. v. Dorel Industries, Inc.,*

14
   2006 WL 179413 (May 26, 2006 S.D. Ind.),

15
   *withdrawn,* 2006 WL 1993420 (July 14, 2006 S.D. Ind.) ...................................... 11

16

*McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,*
   765 F.Supp. 611 (N.D. Cal. 1991) ......................................................................... 11

17

*Mushroom Associates v. Monterey Mushrooms, Inc.,*

18
   1992 WL 442892 (N.D. Cal. May 19, 1992) .......................................................... 11

19

*Nocal, Inc. v. Sabercat Ventures, Inc.,*

20
   2004 WL 3174427 (N.D. Cal. Nov. 15, 2004) ....................................................... 21

21

*Sharper Image Corp v. Honeywell International Inc.,*
   222 F.R.D. 621 (N.D.Cal. 2004)............................................................. 11, 12, 13, 14

22

**RULES**

23

Fed. R. Civ. P. 26(b)(2)............................................................................. 17, 18, 19, 20

24
Fed. R. Civ. P. 26(c) ..................................................................................... 1, 20, 21, 22

25
Fed. R. Civ. P. 30(a)(2)(A) ................................................................................... 3, 17

26
Fed. R. Civ. P. 30(b)(6).............................................................................. 6, 8, 18, 19

27
Fed. R. Civ. P. 30(d)(2)........................................................................................... 17

28
Fed. R. Civ. P. 45(c)(3)(A) ........................................................................... 1, 20, 22

DEFT'S OPP. TO PLTFS' MOTION RE:
WILLFULNESS AND CROSS-MOT RE: SUBPOENAS
CASE NO. C-04-5429 CW (EMC)

Patent Local Rule 3-8..................................................................................................... 2, 5, 15, 16

Local Rule 3-4................................................................................................................. 15

Local Rule 16-3............................................................................................................... 15

Local Rule 37-1............................................................................................................... 15

WASH 1656995.1

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 3, 2006, at 3:00 p.m., or as soon thereafter as may be heard in Courtroom C, 15th Floor, of the above-entitled Court, Defendants INSMED, INC., CELTRIX PHARMACEUTICALS, INC. and INSMED THERAPEUTIC PROTEINS, INC. (collectively "Insmed") will and do hereby move this Court pursuant to Federal Rules of Civil Procedure 45(c)(3)(A) and 26(c) for entry of an order to quash or limit subpoenas served by Plaintiff Tercica, Inc. ("Tercica") upon Foley & Lardner LLP and WilmerHale, and for a protective order as to the subpoena Tercica served upon Sterne, Kessler, Goldstein & Fox PLLC. Good cause exists for said relief in that Plaintiffs have asserted an extraordinary scope of documents to be produced.

In the combined memorandum of points and authorities that follows, Insmed opposes Plaintiffs' Motion on Scope and Procedure of Willfulness Discovery and sets forth the grounds supporting its Cross-Motion to Quash or Limit Scope of Subpoenas served on Insmed's opinion counsel. Plaintiffs have failed to justify their extraordinary request for invasive discovery from Insmed's attorneys and far-ranging additional discovery from Insmed, and good cause exists for the Court to limit the scope of the supplemental discovery to which Plaintiffs are entitled as a result of Insmed's election to assert its reliance upon the opinion of its counsel as a defense to Plaintiffs' allegations of willful infringement.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Motion and their broad subpoenas to three law firms are nothing more than a thinly-veiled attempt to invade the attorney-client privilege and work product immunities between Insmed and its attorneys including its chosen trial counsel. Plaintiffs' Motion ignores relevant case law, the Northern District's Patent Local Rules, the Court's November 23, 2005 Order, and the standards established by the Federal Rules of Civil Procedure.

Plaintiffs argue for an astonishingly broad waiver based on a few lines of dicta from a footnote in the Federal Circuit's recent decision in *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). Plaintiffs contend that certain cherry-picked sentences in that

1

1   footnote require Insmed to disclose all advice provided to Insmed by any attorney (including trial

2   counsel) relating to the patents-in-suit at any time, and require production of all work product

3   materials ever communicated directly or indirectly to Insmed by any attorney (including trial

4   counsel) at any time. Plaintiff's selective quotation of *EchoStar* is directly at odds with the

5   fundamental holding of *EchoStar*, that "[b]y asserting an advice-of-counsel defense to a charge

6   of willful infringement, the accused infringer does not give their opponent unfettered discretion

7   to rummage through all of their files and pillage all of their litigation strategies." *EchoStar*, 448

8   F.3d at 1303. Plaintiffs' position, if endorsed by the Court, would allow Plaintiffs to do precisely

9   what *EchoStar* states is not permitted. Furthermore, Plaintiffs' Motion failed to disclose that

10  other district courts have – for sound reasons that are applicable here – rejected Plaintiffs'

11  sweeping interpretation of precisely the same cherry-picked quotations from that case.

12       Plaintiffs are improperly seeking to use Insmed's recent production of documents on the

13  limited issue of the advice-of-counsel defense to engage in wide-ranging discovery well beyond

14  the scope of that limited production. Plaintiffs argue for wide discovery into Insmed's state of

15  mind regarding willfulness based upon the inaccurate contention that Insmed is unwilling to

16  allow any discovery relating to its state of mind. Insmed, however, has never suggested that

17  Plaintiffs would be precluded from inquiring as to its state of mind based on the opinions of

18  counsel should Insmed decide to produce the opinions. Rather, Insmed has taken the position

19  that the only willfulness discovery permissible at this stage of the case is discovery that is

20  directly related to the opinions and the documents produced with them. Insmed's position is

21  completely consistent with the views of the Court as articulated in its November 23, 2005 ruling

22  on the timing of Insmed's disclosures under Patent Local Rule 3-8. In that Order, the Court

23  made clear that all willfulness discovery save the limited discovery related to opinions of counsel

24  should be completed during the fact discovery period that closed on January 31, 2006.

25       Insmed has already produced over 725,000 pages of documents and 300 gigabytes of

26  electronic documents as well as provided nine of the agreed-upon ten depositions in this case. On

27  July 17, 2006, Insmed elected to rely upon the advice-of-counsel defense and therefore produced

28  to Plaintiffs its opinions related to non-infringement and/or invalidity of the patents in suit.

1  Plaintiffs now seize upon this act in a naked attempt to expand discovery beyond that to which

2  they previously agreed and that which was ordered by this Court.

3  Further, Plaintiffs contend, without citation to any authority, that they are entitled to go

4  well beyond the ten-deposition limit that is imposed by Federal Rule of Civil Procedure

5  30(a) (2) (A) and that Plaintiffs previously agreed to in this case, and argue that two other

6  depositions should be "re-opened" in violation of the Federal Rules-imposed "one day of seven

7  hours" limit to which Plaintiffs also agreed.  The rules that Plaintiffs have failed to cite make

8  clear that they cannot meet their burden.

9  Finally, Insmed also cross-moves for an Order quashing, or, in the alternative,

10 significantly limiting, the scope of subpoenas served by Plaintiff Tercica on three law firms.

11 Plaintiffs' subpoenas are overly broad and harassing in that they seek documents from these

12 firms that have already been produced and seek the work product and communications of trial

13 counsel that are not discoverable for the reasons discussed above.  Plaintiffs' subpoenas are at

14 odds with existing case law, and should be quashed or, in the alternative, significantly limited

15 consistent with the proper scope of Insmed's limited waiver.

16 **I.      STATEMENT OF FACTS**

17 Last October, Plaintiffs moved this Court to allow them to avoid the requirements of the

18 Patent Local Rules and force Insmed to make a premature election on the issue of Defendants'

19 advice of counsel defense.  Insmed opposed the motion.  At the hearing, the Court specifically

20 discussed with Plaintiff Tercica's counsel the scope of willfulness discovery that would take

21 place both prior to and after any disclosure of opinions of counsel, should Insmed elect to rely

22 upon such opinions in defense of Plaintiffs' willfulness allegations:

23
24
> The Court: All right.  The offer has been made to open discovery
> on the – *on this limited issue after the disclosure* is made, which
> defendants prefer to be after the claims construction.

25
26
> Mr. Larson: Right.  Which would basically put us into next
> summer doing discovery, reopened on this particular issue, on the
> – in the two to three months prior to trial.

27
> *          *          *          *

28
> The Court: Now, on the other hand, it's not like you're going to be
> without any discovery.  I mean, it's not -- *we're talking about a*

3

1    *specific aspect of the willfulness question. I mean you can still*
     *conduct other discovery.*

2

3    Mr. Larson: I think it's fair to say that a -- a -- probably a very key
     part and possibly the only important part of the willfulness
     discovery will be opinions of counsel and whether the defendants

4    elect to rely upon them. Yes, there are other facts and
     circumstances that bear on the issue of willfulness, but I think that

5    opinions of counsel are pretty central to that -- to that analysis.

6    The Court: Right. *But it's not like you are going to be totally in*
     *the dark.* For instance, for ADR purposes I understand why it

7    would be desirable to have this decision made earlier than later and
     be able to assess that more fully. But, you know, when you go into

8    ADR, especially early ADR, you're not going to have the claims
     construction. You're not going to have lots of things. And – but

9    it's not like you're going to be totally in the dark without any tools
     to discover what the position might be and *what other evidence*

10   *might be as it relates to the willfulness question.*

11   (Declaration of Larry L. Shatzer in Support of Defendants' Opposition to Plaintiffs' Motion on

12   Scope and Procedure for Willfulness Discovery and Defendant's Notice of Cross-Motion and

13   Cross-Motion to Limit Scope of Subpoenas ("Shatzer Decl."), Ex. 1 at 33:5-34:15 (emphasis

14   supplied).) At that time, Tercica's counsel specifically acknowledged the limited scope of any

15   supplemental discovery that would follow Insmed's election to assert the advice of counsel

16   defense:

17   Mr. Larson: I think that discovery and any motions that arise from
     it and any expert reports that might be prepared on it is probably a

18   two- to three-month time period. That is fairly optimistic. But if
     you are able to do the depositions, you need very quickly –

19   typically, *they involve a deposition of the person who wrote any*
     *such opinion or delivered such an opinion, and the person who*

20   *received the opinion.*

21   *Id.* at 35:6-13 (emphasis supplied).

22   Subsequently, the Court denied Plaintiffs' Motion on November 23, 2005, and in a

23   footnote addressed this point again stating:

24   Moreover, even if the ADR session were to take place before the
     willfulness disclosure, Plaintiffs would not be without any

25   information relevant to the issue of willfulness. Rather, *the only*
     *information on willfulness that they would not have would be*

26   *that related to the opinions of counsel.*

27   (Shatzer Decl., at Ex. 2 at 2 n.1 (emphasis supplied).) Consequently, well before fact discovery

28   closed on January 31, 2006, Plaintiffs were aware that the discovery to be conducted following

1   Insmed's advice-of-counsel defense disclosures under Patent Local Rule 3-8 would be limited to

2   the issue of the opinions of counsel and that any other discovery related to its allegations of

3   willfulness needed to be completed during the fact discovery period.

4       The Court issued its claim construction ruling on June 30, 2006. Accordingly, pursuant

5   to the November 23, 2005 Order, on July 17, 2006, Insmed elected to rely upon the advice-of-

6   counsel defense. On that date, Insmed produced 1,139 pages of documents constituting its

7   opinions of counsel related to the patents-in-suit and other related documents within the scope of

8   its waiver. (Declaration of Anthony Son in Support of Defendants' Opposition to Plaintiffs'

9   Motion on Scope and Procedure for Willfulness Discovery and Defendant's Notice of Cross-

10  Motion and Cross-Motion to Limit Scope of Subpoenas ("Son Decl."), ¶ 6.) During fact

11  discovery Insmed's willfulness production was generated after a thorough search of documents

12  from several sources. (Son Decl., ¶¶ 5, 10.) As part of its responses to Plaintiffs' general

13  discovery requests Insmed collected hundreds of boxes of documents and over 300 gigabytes of

14  electronic documents. (Son Decl., ¶ 7.) Those documents were carefully screened by Insmed's

15  trial counsel and any responsive non-privileged document was produced. (Son Decl., ¶ 7 .) In

16  fact, Insmed has produced over 725,000 pages of documents and 300 gigabytes of electronic

17  documents. (Son Decl., ¶ 7.) During this screening process, documents related to any opinions

18  of counsel as to the patents-in-suit were identified and either prepared for production or

19  identified on a privilege log to be provided to Plaintiffs at the time of Defendants' Patent L.R. 3-

20  8 disclosure. (Son Decl., ¶ 8.) Further, with respect to the opinions of counsel related to the

21  patents-in-suit, Insmed requested and received files from its opinion counselors at Hale & Dorr

22  LLP (now WilmerHale), Sterne Kessler, Goldstein & Fox P.L.L.C., and Foley & Lardner LLP.

23  (Son Decl., ¶ 10.) Those files were also reviewed by Insmed's trial counsel and responsive

24  documents, if any, were either produced or identified on a privilege log. (Son Decl., ¶ 11.)

25      Based on its understanding of *EchoStar* and other relevant case law, trial counsel

26  produced all documents or portions of documents reviewed that fell within the scope of Insmed's

27  waiver of attorney-client privilege and work product immunity. (Son Decl., ¶ 9.) Accordingly,

28  trial counsel correctly withheld on work product grounds any document or portion thereof

WASH_#656895.1

1    reflecting Insmed's attorneys' opinion work product, if there was no indication that such work

2    product had been communicated to Insmed.  (Son Decl., ¶ 9.)  Trial counsel also withheld any

3    document or portion thereof reflecting privileged communications unrelated to the opinions on

4    which Insmed relies in this case (*i.e.*, opinions directed to other unrelated patents or subject

5    matters).  (Son Decl., ¶ 9.)

6         Both before and after production of those documents on July 17, Insmed met and

7    conferred with Plaintiffs in an effort to come to an agreement on willfulness discovery.  During

8    those discussions Insmed agreed that it would not object to Plaintiffs exceeding 10 fact

9    depositions by two depositions.  Specifically, it agreed not to object to the depositions of the two

10   authors of the opinions in question as well as a Rule 30(b)(6) witness or witnesses.[1]  Insmed also

11   agreed to a schedule that would permit this discovery to be completed before the parties'

12   September 27, 2006, deadline to exchange pre-trial materials.  Because Insmed's production of

13   documents was consistent with the scope of their waiver of privilege, Insmed would not agree to

14   produce the broad categories of additional documents that Plaintiffs sought.  Likewise, given the

15   Court's prior indication that willfulness discovery after disclosure of any opinions would be

16   limited to those opinions, Insmed would not agree to the open-ended willfulness discovery

17   Plaintiffs were seeking.  (*See* Gaede Decl., Exs. 3, 10, 11, and 12.)

18        Despite Insmed's indication to Plaintiffs that it had gathered responsive documents

19   directly from the law firms possessing relevant documents, on July 19, 2006, Plaintiff Tercica

20   served subpoenas on three law firms, Foley & Lardner LLP, WilmerHale, and Sterne, Kessler,

21   Goldstein & Fox PLLC.  (*See* Declaration of Douglas H. Carsten in Support of Defendants'

22   Opposition to Plaintiffs' Motion on Scope and Procedure for Willfulness Discovery and

23   Defendant's Notice of Cross-Motion and Cross-Motion to Limit Scope of Subpoenas ("Carsten

24   Decl."), Exs. 1, 2, and 3.)  For the most part these subpoenas seek documents either already

25   produced or documents that are not properly within the scope of Insmed's waiver.

26

27

---

[1]        Plaintiffs have taken nine fact depositions to date.

1    On July 20, 2006, Insmed wrote to Tercica's counsel outlining its objections to the

2  subpoenas, and requested a meet and confer that would allow the parties to present the Court

3  with all outstanding issues, including the subpoenas, relating to the scope of willfulness

4  discovery together to promote economy. (*See* Carsten Decl., Ex. 4.) On July 25, 2006, counsel

5  for Plaintiff Tercica and counsel for Insmed met and conferred, and were unable to resolve all

6  existing disputes relating to the three subpoenas. (Carsten Decl., ¶ 7.)

7  **II.    ARGUMENT**

8        **A.    Insmed Has Produced All Documents Within The Scope Of Its Waiver And**

9             **Plaintiffs' Motion Improperly Seeks To Invade Attorney-Client And Work**

10            **Product Protections**

11    Plaintiffs seek an order that Insmed be required to produce all communications from trial

12  counsel "to Insmed on infringement and validity of the patents in suit." (Pls' Mot. at 9.)

13  Plaintiffs have served subpoenas on three law firms seeking the same documents. (Carsten

14  Decl., Exs. 1, 2, and 3.) Plaintiffs thus argue for a sweeping evisceration of existing privilege-

15  waiver law in connection with advice-of-counsel defenses. Plaintiffs' argument is based solely

16  on a few sentences from a footnote in a recent Federal Circuit case. Specifically, Plaintiffs

17  contend that *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) compels a

18  waiver of any and all privilege between Defendants and Foley & Lardner (including trial

19  counsel), and requires production of all work-product that may have been communicated to the

20  client regardless of whether the work-product came from opinion counsel or trial counsel.

21  Subsequent decisions interpreting *EchoStar*, however, are noticeably absent from Plaintiffs'

22  motion. Those decisions make it clear that *EchoStar* does not contain any such broad holding.

23    In *EchoStar*, the accused infringer, EchoStar, sought to rely solely upon the work of in-

24  house counsel to defend against a claim of willful infringement. ***After the case began***, EchoStar

25  obtained opinion advice from the law firm of Merchant & Gould regarding infringement, but

26  elected not to rely on it. The opinion attorneys at Merchant & Gould in *EchoStar* were not

27  EchoStar's trial counsel. The patentee, TiVo, sought Merchant & Gould's documents. TiVo,

28  unlike Plaintiffs here, did not seek production of any materials from EchoStar's trial counsel.

1   The district court held that EchoStar waived its attorney client privilege with respect to Merchant

2   & Gould, and ordered the production of all documents from Merchant & Gould including all

3   work product whether communicated to the client or not. *Id.* at 1297. The district court ruled

4   that EchoStar could redact information related to trial preparation. *Id.* EchoStar did produce

5   communications from Merchant & Gould, but did not produce any work product. The district

6   court clarified its order to state that the work-product waiver extended to all work product

7   documents, whether or not communicated to EchoStar.

8          EchoStar took a writ of mandamus to the Federal Circuit to vacate the orders of the

9   district court that compelled the production of the Merchant & Gould documents "that EchoStar

10  asserts are protected from discovery by the work-product doctrine." *Id.* at 1296. The *EchoStar*

11  case, therefore, did not address the question of waiver of attorney-client privilege and work-

12  product privilege of trial counsel at all. Indeed, the issue of attorney-client privilege with trial

13  counsel was not before the Federal Circuit, and therefore, any statements in *EchoStar* that

14  Plaintiffs contend support such a broad scope of waiver are dicta by definition, including the lone

15  sentence relied upon by Plaintiffs. In fact, *EchoStar* narrowed the scope of the waiver ordered

16  by the district court and held that the waiver only applied to the limited circumstances where

17  documents were communicated to the client or referenced a communication to the client.

18  *EchoStar*, 448 F.3d at 1302-3.

19         Plaintiffs also cite to *Akeva LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003)

20  in an attempt to stretch the *EchoStar* decision to cover the situation here. The *Akeva* case is,

21  however, readily distinguishable from the facts in this case. In *Akeva*, the defendants did not

22  obtain an opinion from opinion counsel until *after the litigation had begun*. *Akeva*, 243 F. Supp.

23  2d at 419. The opinion counsel in that case had been retained by trial counsel and had not had

24  any contact with the defendants except for the opinion letter which was provided approximately

25  four months after the complaint had been filed. *Id.* In addition, the defendants' Rule 30(b) (6)

26  witness testified that "defendants not only relied upon [opinion counsel's] opinion, but also that

27  of Gerald Boss, *one of their present litigation attorneys*." *Akeva*, 243 F. Supp. 2d at 419

28  (emphasis supplied). Defendants in that case sought to rely upon only opinion counsel's opinion

1  in support of their willfulness defense. On those facts, the *Akeva* court held that the privilege

2  waiver reached trial counsel – because trial counsel had been expressly relied upon by the

3  defendants.

4    The *Akeva* fact pattern is strikingly different from the facts at issue here. In this case, the

5  opinions on the patents-in-suit were obtained well prior to the initiation of litigation. (*See* Shiang

6  Decl., at Exs. 1, 5, and 8.) Opinion letters relating to two patents-in-suit were obtained from

7  Beth Burrous, an attorney with Foley & Lardner LLP. (*See* Shiang Decl., at Exs. 1 and 8.) An

8  opinion letter on the third patent-in-suit was obtained from Hollie Baker, an attorney with

9  WilmerHale (then Hale & Dorr). (*See* Shiang Decl., at Ex. 5.) Insmed's trial attorneys had no

10  role whatsoever in the preparation of any of those opinion letters. (Shatzer Decl., at ¶¶ 5 and 6.)

11  One of Ms. Burrous' opinion letters was supplemented during the time the case was active. No

12  member of the Foley trial team, however, had any role whatsoever regarding that

13  supplementation. Indeed, the evidence is directly contrary. (Shatzer Decl., at ¶¶ 7 and 8.) Mr.

14  Shatzer's declaration makes absolutely clear that he and the entire Foley trial team scrupulously

15  ensured that opinion counsel's work on these opinions were independent of any involvement

16  from Foley's trial team and likewise that opinion counsel had no role whatsoever in the

17  litigation. (Shatzer Decl. at ¶¶ 9 and 10.) Thus, unlike *Akeva*, where a member of the trial team

18  actually provided opinions of counsel that were relied upon, the facts of this case demonstrate

19  that Insmed's opinion counsel were entirely separate from trial counsel. Consequently, *Akeva* is

20  inapposite.

21    Indeed, Plaintiffs fail to inform the Court that another district court decision interpreting

22  the language Plaintiffs' rely upon from *EchoStar* does not support their position. That case

23  instead found that *EchoStar* and its citation to *Akeva* do not undermine the attorney-client

24  privilege between a client and its selected trial counsel.

25    In *Ampex Corp. v. Eastman Kodak Co.*, 2006 WL 1995140 (D. Del. Jul. 17, 2006), the

26  plaintiff "want[ed] all of the attorney-client communications between Kodak and its trial counsel

27  bearing on the subject of infringement, and it wants a log of all withheld materials relating to that

28  subject." *Ampex* at *1. Kodak's in-house counsel had concluded that Kodak did not infringe the

1  patent-in-suit. *Id.* Two months before Ampex filed actions in district court and the International

2  Trade Commission, Kodak retained outside opinion counsel to render an opinion as to the patent.

3  *Id.* The outside counsel provided its opinion orally and, later, in writing after Ampex had filed

4  its actions. *Id.*

5       Based on the same language in *EchoStar* the Plaintiffs rely upon, Ampex argued that "an

6  advice-of-counsel defense in a patent case effects a wholesale waiver of privilege as to any

7  communication that any attorney has with a client, so long as the communication touches on the

8  same topic as the opinion on which the client relies to defend against a charge of willfulness."

9  *Id.* at *2. Based on *Akeva*, Ampex argued "that there is no temporal limitation on the waiver of

10  privilege, if infringing activity continues, nor is there any distinction between advice received

11  from trial counsel and that received from opinion counsel." *Id.*

12       Judge Jordan rejected these arguments out of hand as "an extravagant demand at odds

13  with the generally understood contours of the attorney-client privilege." *Id.* The court then

14  carefully evaluated the facts and dispute at issue in the *EchoStar* decision, noted *EchoStar's*

15  broad dicta regarding attorney-client privilege waiver, but found that "[n]othing in that context,

16  however, indicates a desire by the Court of Appeals to have every communication a client has

17  with its trial counsel on the very subject of an infringement trial open to review by opposing

18  counsel." *Id.* at *3.

19       Similarly, the court correctly observed that "*Echostar* did not even address the issue of

20  communications with trial counsel." *Id.* at *4. Rather, the court found that Ampex was trying to

21  bootstrap the *EchoStar* dicta with the *Akeva* case, just as Plaintiffs are attempting here. *Id.*

22  Judge Jordan distinguished *Akeva* because Kodak was not – as Insmed is not – relying upon an

23  attorney as both trial counsel and opinion counsel. *Id.* Judge Jordan emphasized the importance

24  of this distinction in footnote 4, in which he stated "I emphasize that the present case does not

25  involve a party choosing to use ***an attorney*** as both opinion counsel and trial counsel. That

26  choice involves an unfortunate blending of roles that is, thankfully, rare and beyond the

27  discussion provided here." *Id.* at *4 n.4 (emphasis supplied). In this case, Plaintiffs are arguing

28  that a privilege waiver regarding communications with opinion counsel applies not to the

1    individual attorney, but rather to the attorney's entire firm.  The Delaware court, however, made

2    it clear that a waiver regarding communications with trial counsel could only be found when *the*

3    *same individual attorney* is acting in both roles. [2]

4          These post-*EchoStar* rulings and Insmed's decision on the proper scope of waiver in its

5    July 17 document production are entirely consistent with existing case law in this District. [3]  In

6    *Sharper Image Corp v. Honeywell International Inc.*, 222 F.R.D. 621 (N.D.Cal. 2004),

7    Magistrate Judge Brazil recognized that trial counsel are specially situated in their relationship

8    with a client, and that waiver of privilege as to trial counsel should be found only in very specific

9    circumstances.  In *Sharper Image*, the plaintiff argued that the advice-of-counsel defense

10   required broad waiver of all communications and work-product of all counsel and firms without

11   regard to time.  *Sharper Image*, 222 F.R.D. at 625.  Magistrate Judge Brazil refused to allow

12

---

13         [2]      There is a second case in which plaintiffs sought sweeping discovery based on
      *Echostar* and *Akeva*.  In *Indiana Mills & Manufacturing, Inc. v. Dorel Industries, Inc.*, 2006 WL
14    179413 (May 26, 2006 S.D. Ind.), *withdrawn*, 2006 WL 1993420 (July 14, 2006 S.D. Ind.), the
      defendant opted to rely on an advice-of-counsel defense, produced opinion letters, and offered to
15    make a witness available to testify to the defendants reliance on the opinion.  The defendant,
      however, moved for a protective order to prevent the deposition of opinion counsel.  Opinion
16    counsel in that case was an attorney representing defendants in the litigation as well.  *Id.*, at *3.
      Even in such a dual-relationship attorney case, the court stated that "There is no indication that
17    the *EchoStar* court intended to extend this waiver to communication of trial counsel.  In fact, that
      issue was not before the Court." *Id.* at *7.  With respect to post-filing privileged information, the
18    *Indiana Mills* court stated that "the *EchoStar* court appears to agree with this Court that a
      balancing of the need for discovery with the need to protect attorney-client and work-product
19    privilege communications and/or documents is necessary." *Id.*  Based on the lack of evidence
      that allowing a fishing expedition would "uncover anything contrary to the opinions provided
20    prior to trial," the *Indiana Mills* court refused to broaden the temporal scope of post-filing
      materials.  *Id.*  The *Indiana Mills* decision, however, was recently withdrawn by the court based
21    on an apparent misunderstanding of the facts in that case.  *See Indiana Mills & Manufacturing,
      Inc. v. Dorel Industries, Inc.*, 2006 WL 1993420 at *1 (July 14, 2006 S.D. Ind.).

22         [3]      In this case, the issue of post-filing opinion counsel communications and
23    documents is not in dispute.  Insmed produced all communications and documents reflecting
      communications (regardless of date) between opinion counsel and Insmed and logged on a
24    privilege log all documents (regardless of date) not communicated from the opinion counsel to
      Insmed or redacted information related to opinions directed to other unrelated patents or subject
25    matters.  Thus, Insmed has already complied with the broad temporal scope suggested in
      *EchoStar* and *Akeva*.  Thus, the cases *Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992
26    WL 442892 (N.D. Cal. May 19, 1992), and *McCormick-Morgan, Inc. v. Teledyne Industries,
      Inc.*, 765 F.Supp. 611 (N.D. Cal. 1991), relied upon by Plaintiffs are not relevant in that they
27    provide no discussion or analysis relating specifically to trial counsel.  Furthermore, Plaintiffs'
      citation to *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356
28    (Fed. Cir. 2006) is irrelevant because that case had nothing to do with privilege waiver.

1  such broad discovery.  In that case, a firm, Darby & Darby, performed significant work on behalf

2  of one of the defendants in the case.  *Id.* at 640-641.  The firm provided comments on another

3  firm's opinion letter, and provided its own views on the question of infringement.  *Id.* at 641.

4  Darby also served as litigation counsel on behalf of the defendant at the very outset of that case,

5  until replaced by the Robins Kaplan firm.  *Id.* at 642.  However, "nothing of real litigation

6  moment occurred during Darby's brief tenure as litigation counsel."  *Id.*

7
8
> No depositions were taken.  No consequential motions were
> litigated.  No major case management concessions were made.  No
> serious settlement discussions occurred.

9  *Id.*  Even with this limited scope of early litigation representation, Magistrate Judge Brazil was

10  very concerned that requiring production of communications between Darby and defendant

11  "could cause serious intrusions into matters the attorney-client privilege is designed to protect.

12  This fact forces us to determine whether, under appropriate waiver analysis, such intrusions are

13  justified in the circumstances presented here."  *Id.*  In hesitantly authorizing disclosure of the

14  communications at issue, Magistrate Judge Brazil held that "because Darby served so briefly as

15  [defendant's] lead trial counsel, compelling [defendant] and Darby to disclose their post-

16  complaint communications about infringement would not cause significant harm to [defendant's]

17  interest in having a confidential relationship with its primary trial counsel."  *Id.* at 643.

18      In analyzing the waiver with respect to post-filing communications[4] with defendant's trial

19  counsel, Robins Kaplan, Magistrate Judge Brazil conducted the same analysis and held that the

20  waiver did not reach trial counsel.

21
22
23
24
25
26
> We base this holding on the following considerations.  First, in
> patent litigation between competitors, disabling a defendant from
> having a confidential relationship with its lead trial counsel about
> matters central to the case would cause considerable harm to the
> values that underlie the attorney-client privilege and the work
> product doctrine.  Second, because of the perceived centrality to
> this kind of litigation of word gaming, there is a considerable risk
> that a defendant in these kinds of cases who could not have a
> confidential relationship with its lead trial counsel would be at a
> considerable disadvantage.  In some circumstances, the magnitude
> of that disadvantage could threaten basic due process (fairness)

---

27
28
[4]      In this case, there were no communications relating to the subject matter of this
litigation or the patents-in-suit between Insmed and Foley trial counsel prior to the filing of the
complaint.  (Shatzer Decl., at ¶¶ 12 and 13.)

DEF'T'S OPP. TO PLTFS' MOTION RE:
                              WILLFULNESS AND CROSS-MOT RE: SUBPOENAS
                              CASE NO. C-04-5429 CW (EMC)

1    values and could dislodge essential underpinnings of the adversary
     system.  Third, in patent litigation a perception that the defendant's
2    ability to maintain a confidential relationship with its trial counsel
     was seriously impaired would distort the balance of power between
3    the parties, giving plaintiffs unfair leverage in settlement
     negotiations.  Such a perception also would encourage the filing of
4    claims of willful infringement without regard to their merit.

5    A defendant who understood that invoking the advice of counsel
     defense would disable him from communicating in confidence
6    with his trial counsel about matters critical to liability would feel
     great pressure to forego the right (conferred on him by patent law)
7    to defend himself on this important ground.  Such a defendant
     might even be discouraged from seeking legal advice before
8    deciding whether to proceed to market with a product in an arena
     in some part of which patents had already issued.  Doctrine that
9    discouraged parties from seeking legal advice in these settings also
     would discourage parties from trying in good faith to design
10   around issued patents – thus undermining a purpose of substantive
     patent law whose importance grows with the reach of technology
11   and with the expansion of the spheres covered by issued patents.

12   *Id.* at 643.  Those same factors which compelled Magistrate Judge Brazil to decline to extend the

13   advice-of-counsel waiver to defendant's trial counsel in *Sharper Image* similarly compel the

14   same conclusion here.  As in *Sharper Image*, based on Insmed's July 17 production, Plaintiffs

15   now have access to "a great deal of otherwise confidential information that is appreciably more

16   likely to have probative utility on the issues of whether [defendants] in fact relied on the [opinion

17   letters] and, if so, whether that reliance was reasonable." *Id.* at 644.  When Insmed retained the

18   Foley trial team, which they did "only after the litigation was under way, it was to litigate, and

19   only to litigate." *Id.*  Thus, the waiver should not extend to the Foley trial team.

20       Anticipating an argument that the waiver should extend to trial counsel because "willful

21   infringement is a continuing tort" – an argument Plaintiffs have pressed here – Magistrate Judge

22   Brazil noted that such an argument would mean that "every communication about infringement

23   between [a defendant] and any lawyer at any time (before entry of final judgment) would be

24   relevant, i.e., probative of what legal advice [defendant] received about infringement and

25   whether [defendant] could have continued to believe that selling the accused products did not

26   invade plaintiff's patent rights."  Magistrate Judge Brazil refused to endorse such an all-

27   encompassing waiver.  Like the *Sharper Image* defendant, Defendants here have "not radically

28   changed (in mid-litigation stream) the bases for its contention that the [accused product] does not

1    infringe." *Id.* at 645.  Like the *Sharper Image* defendant, Defendants here continue to rely on the

2    pre-filing opinions of counsel.  *Id.*  There is nothing but Plaintiffs' naked speculation that Foley

3    trial counsel ever advised Insmed that the opinion letters at issue in this case were not entirely

4    competent or ever advised Insmed that the accused product in this case may infringe the patents-

5    in-suit.  "There is nothing but raw speculation to support such a notion – and raw speculation is

6    not enough to justify the substantial harms that obviously would flow" from ordering trial

7    counsel to disclose its communications with Insmed.  *Id.*

8           Similarly, in *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D. Cal.

9    2004), this Court, relying upon *Sharper Image*, held that the waiver of privilege did not include

10   litigation counsel due to the special nature of a client's relationship with its chosen trial counsel.

11                  Unless any waiver of the attorney-client privilege respecting
                    communications with litigation counsel is circumscribed so as to
12                  not extend to litigation-related communications with trial counsel,
                    it is difficult to imagine how any frank communication between the
13                  client and litigation counsel on the subject of infringement could
                    be shielded from disclosure.  Waiver of the attorney-client
14                  privilege and work product doctrine in the context not only strikes
                    at the core of these privileges, but it also seems far afield from the
15                  central (though not sole) purpose of the implied waiver doctrine –
                    to ensure as a matter of fairness that the defendant not be permitted
16                  to assert reliance on advantageous advice obtained from opinion
                    counsel while shielding from discovery contradictory or adverse
17                  information received in connection with that advice.

18   *Id.* at 477 (footnotes omitted).  The reasoning behind the Court's decision in *Collaboration*

19   *Properties* applies with equal force here to Insmed's chosen Foley trial team.[5]  Plaintiffs'

20   arguments for a broad waiver are, thus, directly inconsistent with this District's case law.  As

21   discussed above, nothing in *EchoStar* supports an argument that *Sharper Image* or *Collaboration*

22   *Properties* are no longer good law.

23          Similarly, this District's Patent Local Rules also support Insmed's reading of the case law

24   as they provide:

25   _____

26        [5]      Plaintiffs misleadingly cite to the *Collaboration Properties* decision.  (Pls' Mot.
     at 8.)  They lift the words "substantially prejudice" from the following passage without including
     the necessary context: "Moreover, given the otherwise generally broad scope of the waiver,
27   extending to the subject matter of the advice given by advice counsel on which the defendant
     relies . . . , *it is unlikely that limiting the waiver in this temporal fashion will substantially*
28   *prejudice the plaintiff*."  224 F.R.D. at 477 (emphasis supplied).

                                    14

(b)   serve a privilege log identifying any other documents, *except those authored by counsel acting solely as trial counsel,* relating to the subject matter of the opinion(s) which the party is withholding on the grounds of attorney-client privilege or work product protection.

Patent Local Rule 3-8(b) (emphasis supplied).

The Local Rules clearly use the word "counsel" to refer to an individual attorney representing a party in litigation. (*See, e.g.*, L.R. 3-4 (requiring name, address, and other identifying information including bar number of counsel on the first page of a paper presented for filing); 16-3 (requiring lead trial counsel to confer); L.R. 37-1 (requiring counsel to meet and confer).) Thus, any documents authored by attorneys solely acting as trial counsel are clearly recognized as not being within the scope of anticipated discovery under this Court's Patent Local Rule 3-8.

Thus, Plaintiffs' positions are an unprecedented extension of dicta from a Federal Circuit case, are unsupported by the case law interpreting that decisions, and are contrary to the case law and Patent Local Rules of this District. Plaintiffs' Motion seeking broader document production that what Insmed has already produced should, therefore, be denied.

**B.   Plaintiffs Are Not Entitled To Discovery Beyond The Documents Produced By Defendants On July 17, 2006**

Plaintiffs also seek to avoid the Court's November 23, 2005 Order, in which the Court denied Plaintiffs' motion to disregard the Patent Local Rules and force Insmed to make a premature election on the issue of its advice-of-counsel defense. In connection with that motion, the Court asked specifically about the scope of willfulness discovery to be taken prior to the advice-of-counsel disclosures and the scope of discovery to be taken after the advice-of-counsel disclosures were Insmed to rely on that defense. The Court expressly addressed the issue of Plaintiffs' ability to obtain discovery relating to willfulness apart from the advice of counsel defense before Insmed chose to elect to rely upon advice-of-counsel, and in connection with the discovery to be taken following the election stated at the hearing that "*we're talking about a specific aspect of the willfulness question. I mean you can still conduct other discovery.*"

1   (Shatzer Decl., Ex. 1 at 33:19-22 (emphasis supplied).)  The Court also referred to this

2   discussion in its November 23, 2005 Order at footnote 1:

3              Moreover, even if the ADR session were to take place before the
               willfulness disclosure, Plaintiffs would not be without any
4              information relevant to the issue of willfulness.  Rather, *the only
               information on willfulness that they would not have would be*
5              *that related to the opinions of counsel.*

6   (Shatzer Decl., Ex. 2 at 2 n.1 (emphasis supplied).)  Consequently, Plaintiffs were well aware

7   that the discovery to be conducted following Insmed's advice-of-counsel defense disclosures

8   under Patent Local Rule 3-8 would be limited to the issue of the opinions of counsel.

9            Despite the Court's specific instructions in this regard, Plaintiffs now seek leave to take

10  broad discovery relating to any conceivable issue regarding Insmed's "state of mind." (Pls' Mot.

11  at 10.)  Insmed has clearly stated that it would permit questioning relating to its state of mind as

12  it relates to the opinions of counsel during this limited discovery period.  (Gaede Decl., Ex. 12 at

13  2 ("Discovery regarding 'Defendants state of mind regarding willful infringement,' *except to the*

14  *extent it relates to any opinions of counsel* should have been conducted during the fact

15  discovery period that closed on January 31.") (Emphasis supplied).)  No questioning should be

16  permitted beyond that reasonably related to the documents produced by Insmed on July 17

17  pursuant to Patent Local Rule 3-8.

18           In fact, Plaintiffs have had every opportunity to take full discovery relating to

19  Defendants' state of mind except for the issue of reliance on opinions of counsel.  (*See* Shatzer

20  Decl. at ¶¶ 13 and 14.)  For example, Plaintiffs have already made broad inquiries into Insmed's

21  first awareness of the patents-in-suit, Insmed's responses to the patents-in-suit, and Insmed's

22  understanding of the patents-in-suit.  (*See, e.g.*, Shatzer Decl., Ex. 5 at 18:5-19:7, 20:18-21:1,

23  31:1-32:2, 55:7-56:2, 62:19-65:2, 68:23-69:21, 101:15-104:6, 120:8-123:6, and 141:15-144:6;

24  Ex. 6 at 207:6-211:23, 213:8-218:17, 221:12-222:4, 253:19-256:24, 258:18-260:25, 261:18-

25  263:9, and 280:1-284:17; and Ex. 7 at 23:3-27:25, 33:18-39:23, 87:5-94:18, 105:10-110:24, and

26  157:5-174:18.)  Because Plaintiffs have already had an opportunity to take full discovery relating

27  to willfulness except for the limited issue of opinions of counsel, the Court should not grant

28  Plaintiffs a second bite at the apple in this limited discovery period.

**C.      Plaintiffs Should Not Be Granted More Than Two Depositions Over The Federal Rule And Agreed-Upon Limit of Ten**

Plaintiffs, assert that they are entitled to go well beyond the ten deposition limit they agreed to in this case.  Specifically, they seek a total of 15 depositions and seek approval to re-open two more depositions.  Thus, Plaintiffs seek six depositions on the issue of willful infringement alone, and re-opening two additional depositions.  At the hearing on Plaintiffs' motion to force Insmed into a premature advice-of-counsel defense election, Plaintiff Tercica's counsel, Mr. David Larson, stated that the scope of discovery relating to advice-of-counsel willfulness discovery would be the authors of the opinions and the person who received the opinion.  (Shatzer Decl. at Ex. 1 at 34:25-35:20.)  There are only two opinion authors (and Insmed has agreed not to object to their depositions) and only two identified recipients on the face of the opinions (Mr. Glen Kelley and Mr. Ronald Gunn).  In stark contrast to Tercica's representations last November, it now seeks six additional depositions as well as reconvening two others.  Plaintiffs cite no authority for their request to exceed the limit set forth in the Federal Rules, and Plaintiffs cannot meet the applicable standards.

Under Federal Rule of Civil Procedure 30(a) (2) (A), a party must obtain leave of court "which shall be granted to the extent consistent with the principles stated in Rule 26(b) (2)" if "a proposed deposition would result in more than ten deposition being taken . . . by the plaintiffs . . ."  Similarly, under Rule 30(d) (2), depositions are "limited to one day of seven hours . . .  The court must allow additional time consistent with Rule 26(b) (2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination."  Fed. R. Civ. P. 30(d) (2).  Plaintiffs agreed that Rules 30(a) (2) (A) and 30(d) (2) apply to this case.  (*See* Shatzer Decl., Ex. 3 at p. 8 and Ex. 4 at p. 1.)  Under Rule 26(b) (2), the "frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking

1   discovery has had ample opportunity by discovery in the action to obtain the information

2   sought . . ." Fed. R. Civ. P. 26(b) (2).

3                                    **1.     The Five Additional Deposition Request**

4               Plaintiffs contend that because they "now know the identities" of individuals who are

5   named recipients and authors of certain opinion letters, and because Defendants "have been

6   adjudicated to infringe" that somehow provides "good cause" for circumventing the Federal

7   Rules of Civil Procedure. Plaintiffs ignore that most of the issues that are the subject of the

8   produced opinions have yet to be resolved. Plaintiffs have already taken nine fact depositions.

9   Insmed has agreed not to object to the depositions of the author of the Foley & Lardner opinions

10  (Beth Burrous) and the author of the Hale & Dorr opinions (Hollie Baker), as well as to

11  providing one or more 30(b) (6) witnesses on behalf of Insmed to testify to a properly narrowed

12  topic regarding the reliance by Insmed on those opinions.

13              Plaintiffs have not met the standard to show that the additional discovery they seek would

14  not be "unreasonably cumulative or duplicative, or is obtainable from some other source that is

15  more convenient, less burdensome, or less expensive" as required by Rule 26(b) (2). Indeed,

16  they cannot make such a showing. Plaintiffs seek to engage in an unfettered fishing expedition

17  reeling in no fewer than 6 additional witnesses and "re-convening" the depositions of two

18  others – nearly doubling the number of depositions Plaintiffs have already taken. Plaintiffs'

19  proposed course of discovery would pull Insmed employees away from their daily tasks, yet

20  again, for the sole purpose adding cumulative testimony to that which Insmed has already

21  agreed – one or more 30(b) (6) deponents. Quite plainly, Plaintiffs' proposed course of conduct

22  here would be far more inconvenient, burdensome, and expensive than what Insmed has

23  proposed and would unfairly burden Insmed on the eve of trial.

24              Moreover, because Insmed has offered to make available one or more 30(b) (6)

25  witnesses, Plaintiffs could easily obtain testimony on behalf of Insmed directly as to its reliance

26  upon the various opinions obtained. Given the short time before the parties must exchange their

27  pre-trial materials (September 27), discovery during this limited willfulness discovery period

28  should be focused on the issues raised by Insmed's July 17 production.

WASH_656985.1

2. **The "Re-Convening" Of The Depositions of Two Additional Witnesses**

Plaintiffs also summarily state that they were "precluded from conducting willfulness inquiries during the previous depositions." (Pls' Mot. at 9.) That is, quite simply, not true. Insmed's counsel allowed broad inquiries into willfulness during the previous depositions. (*See, e.g.*, Shatzer Decl., Ex. 5 at 18:5-19:7, 20:18-21:1, 31:1-32:2, 55:7-56:2, 62:19-65:2, 68:23-69:21, 101:15-104:6, 120:8-123:6, and 141:15-144:6; Ex. 6 at 207:6-211:23, 213:8-218:17, 221:12-222:4, 253:19-256:24, 258:18-260:25, 261:18-263:9, and 280:1-284:17; and Ex. 7 at 23:3-27:25, 33:18-39:23, 87:5-94:18, 105:10-110:24, and 157:5-174:18.) The only area where Insmed's counsel drew the line was with respect to inquiries relating to opinions of counsel as reflected in this Court's November 23, 2005 Order. (*See* Shatzer Decl., ¶ 14.) Plaintiffs' sole bit of cited "evidence" to support their contention that Insmed precluded Plaintiffs from inquiring as to willfulness specifically relates to opinions of counsel. (*See* Shiang Decl., Ex. 9 at 102:21-103:21.)

Dr. Sommer testified for two days, and testified as a 30(b) (6) witness on a third day. Dr. Allan testified for a full day. Under the Federal Rules of Civil Procedure, Plaintiffs may only depose a witness for one day of seven hours. To the extent that Plaintiffs contend that they need Drs. Sommer and Allan to testify as to any willfulness issues beyond the limited issue of opinions of counsel, they have already had an opportunity to, and, indeed, have asked those questions (and had answers to those questions). (*See, e.g.*, Shatzer Decl., Ex. 5 at 18:5-19:7, 20:18-21:1, 31:1-32:2, 55:7-56:2, 62:19-65:2, 68:23-69:21, 101:15-104:6, 120:8-123:6, and 141:15-144:6; Ex. 6 at 207:6-211:23, 213:8-218:17, 221:12-222:4, 253:19-256:24, 258:18-260:25, 261:18-263:9, and 280:1-284:17; and Ex. 7 at 23:3-27:25, 33:18-39:23, 87:5-94:18, 105:10-110:24, and 157:5-174:18.) Plaintiffs cannot establish that they have not had "ample opportunity by discovery in the action to obtain the information sought" as required under Rule 26(b) (2). To the extent that Plaintiffs contend that they need Drs. Sommer and Allan to testify as to any willfulness issues relating to the opinions of counsel, they will get one or more 30(b) (6) witnesses (which might include Drs. Allan or Sommer). Plaintiffs therefore cannot

1  establish that these depositions would not be "unreasonably cumulative or duplicative, or is

2  obtainable from some other source that is more convenient, less burdensome, or less expensive"

3  as required by Rule 26(b) (2).

4      **D.      Plaintiff Tercica's Subpoenas To Three Law Firms Should Be Quashed Or**

5              **Substantially Limited**

6      On July 18, 2006, Plaintiffs and Insmed met and conferred on the issues to be raised in

7  Plaintiffs' current motion. During that meet and confer, Insmed informed Plaintiffs that Insmed

8  had collected documents from each of the law firms, and had produced them in accordance with

9  the stated standard in *EchoStar*. Under the *EchoStar* standard, "when an alleged infringer asserts

10 its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its

11 immunity for any document or opinion that embodies or discusses a communication to or from it

12 concerning whether that patent is valid, enforceable and infringed by the accused. This waiver

13 of both the attorney-client privilege and the work product immunity includes not only any letters,

14 memorandum, conversation, or the like between the attorney and his or her client, but also

15 includes, when appropriate, any documents referencing a communication between attorney and

16 client." *EchoStar*, at 1304. Plaintiffs did not raise with Insmed either in their correspondence or

17 during the meet and confer sessions their intention to serve document subpoenas on any

18 law firms.

19     On July 19, 2006, Plaintiff Tercica served document subpoenas on three law firms. (*See*

20 Carsten Decl., at Exs. 1, 2, and 3.) Each subpoena contained six document requests. (*Id.*) Under

21 Rule 45(c) (3) (A) of the Federal Rules of Civil Procedure, "On timely motion, the court by

22 which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure

23 of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a

24 person to undue burden." Fed. R. Civ. P. 45(c) (3) (A). Here, two of the three subpoenas were

25 issued by this Court – those directed to Foley & Lardner LLP and WilmerHale. The third

26 subpoena, directed to Sterne, Kessler, Goldstein & Fox PLLC, was issued by the United States

27 District Court for the District of Columbia. Nevertheless, this Court has jurisdiction over

28 subpoenas issued by other districts in this case under Rule 26(c), which provides in relevant part

that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters . . ." Fed. R. Civ. P. 26(c); *Del Campo v Kennedy*, 2006 WL 1314656 at *2-3 (N.D. Cal. May 2, 2006).

This Court has quashed subpoenas seeking duplicative discovery as burdensome, and has quashed subpoenas seeking production of privileged information. *Nocal, Inc. v. Sabercat Ventures, Inc.*, 2004 WL 3174427 at *3-4 (N.D. Cal. Nov. 15, 2004). In *Nocal*, Magistrate Judge Larson quashed a subpoena that sought to compel allegedly privileged information from defendant's attorney. *Id.* at *4. The subpoena sought privileged and non-privileged materials, and the non-privileged information had already been produced. *Id.* at *3. The court quashed the subpoena because "Beard and AD's attorney-client and work product privileges and the *Hickman* presumption, outweigh the benefits of allowing Plaintiff access to documents which are either already in its possession or irrelevant." *Id.* The court also granted a protective order under Rule 26(c) to prevent any additional attempts at discovery from the witness. *Id.* at *4. Here, as described more fully below, like in *Nocal*, Plaintiffs have already received or will receive from Insmed the documents upon which privilege has been waived. The remainder of the documents called for by the subpoenas are work-product protected privileged documents.[6]

Each of the subpoenas requested, with one limited exception, the very same documents that Insmed had already produced to Plaintiffs.[7] To the extent that the documents have already been produced, the subpoenas are burdensome and harassing, and should be quashed. The subpoenas also contained requests that went much further than the proper scope of willfulness discovery in connection with opinions of counsel. To the extent that the subpoenas contain

---

[6] During the meet and confer, counsel for Plaintiff Tercica represented that it would not seek any documents not communicated to Insmed from any of the law firms upon which Tercica had served a subpoena. (Carsten Decl., Ex. 5, ¶ 8.) Based on that representation, therefore, this Cross-Motion does not address that issue.

[7] Insmed had not previously collected or produced billing records from the opinion counsel law firms. Insmed has now requested billing records, and, if located, will produce them once they are received and reviewed. (Son Decl., at ¶ 12.)

1  requests which are broader than the proper scope of the waiver, the subpoenas are overbroad and

2  seek privileged information, and should be quashed.

3      The document requests are also fatally flawed because they fail to circumscribe their

4  scope to the proper scope of waiver in this case. Each of the requests is not merely directed to

5  opinion counsel for Insmed. By their very terms the requests reach trial counsel. As described

6  above, the proper scope of waiver as a result of Insmed's election to rely upon the advice-of-

7  counsel defense should not reach Insmed's chosen trial counsel. For example, document request

8  numbers 2, 4, and 5 all would require production and inspection of work-product of trial counsel.

9  (*See* Carsten Decl. at Exs. 1, 2, and 3.) "By asserting the advice-of-counsel defense to a charge

10  of willful infringement, the accused infringer does not give their opponent unfettered discretion

11  to rummage through all of their files and pillage all of their litigation strategies." *EchoStar*, at

12  1303. These requests, if allowed to stand, would allow Plaintiffs to do precisely what *EchoStar*

13  sought to prevent. Similarly, document request number 3 seeks billing records "relating to the

14  rendering of opinions or advice concerning the validity, enforceability and infringement of the

15  Patents-In-Suit." (*See* Carsten Decl. at Exs. 1, 2, and 3.) Applying such a request to trial counsel

16  as written could provide Plaintiffs' counsel with useful information relating to Insmed's trial

17  counsel's preparation for trial based on the dates and entries in the billing records of trial

18  counsel. Because the requests are overly broad, they should be quashed, or at least significantly

19  limited to reflect the correct scope of Insmed's waiver.

20      For these reasons, Insmed requests that the Court enter an order quashing or limiting the

21  scope of the two subpoenas issued by this Court pursuant to Rule 45(c) (3) (A), and entering a

22  protective order pursuant to Rule 26(c) regarding the Sterne Kessler subpoena limiting the scope

23  of the subpoena to the proper scope of advice-of-counsel willfulness discovery.

24  ///

25  ///

26  ///

27  ///

28  ///

1

**III.    CONCLUSION**

2          For all of the foregoing reasons, Plaintiffs' Motion should be denied.

3                                             Respectfully submitted,

4    DATE: JULY 25, 2006                      Foley & Lardner LLP

5

6                                             _____ /s/ Larry L. Shatzer _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFT'S OPP. TO PLTFS' MOTION RE:
WILLFULNESS AND CROSS-MOT RE: SUBPOENAS
CASE NO. C-04-5429 CW (EMC)

WASH_1656895.1