United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>INSMED INCORPORATION, *et al.*,<br><br>Defendants.<br>_____/ | No. C-04-5429 CW (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION ON SCOPE AND PROCEDURE OF WILLFULNESS DISCOVERY; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION TO QUASH OR LIMIT SCOPE OF SUBPOENAS**<br><br>**(Docket Nos. 514, 524)** |

Plaintiffs have sued Defendants for patent infringement and a declaratory judgment of patent infringement. On July 17, 2006, Defendants decided that they would assert the advice-of-counsel defense with respect to the claim of willful infringement. Currently pending is Plaintiffs' motion on the scope and procedure of willfulness discovery and Defendants' cross-motion to quash or limit the scope of subpoenas. Having reviewed the parties' briefs and accompanying submissions, and good cause appearing therefor, the Court hereby **GRANTS in PART** and **DENIES in PART** each party's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On December 23, 2004, Plaintiffs filed suit against Defendants. In their original complaint, Plaintiffs asserted claims for infringement of the '151 patent and for a declaratory judgment of infringement of the '151 and '414 patents. The claim for declaratory relief "was aimed primarily at

Insmed's intended future conduct to infringe once it received FDA approval of its iPlex™ product." Mot. at 5.

Approximately a year later, in December 2005, the FDA approved the iPlex™ product. *See id.* Subsequently, in May 2006, Defendants launched the product. *See id.* Approximately a month later, on June 30, 2006, Judge Wilken issued her claim construction order. *See* Docket No. 510. In that same order, Judge Wilken granted Plaintiffs' motion for partial summary judgment, holding that Defendants infringed claims 1, 2, and 9 of the '414 patent and that the '151 patent is not invalidated by the Maack and Sommer abstracts. Per this Court's prior ruling, *see* Docket No. 258, Defendants then had fifteen days to make a decision as to whether they would rely on an opinion of counsel as part of a defense to Plaintiffs' claim of willful infringement. On July 17, 2006, Defendants decided that they would assert the advice-of-counsel defense.

Accordingly, on the same day, Defendants produced to Plaintiffs documents related to opinions from various law firms, including Foley & Lardner ("Foley") who is also trial counsel in this case. With respect to Foley, three formal opinions were given. First, on October 21, 2002, Foley provided an opinion on invalidity of the '414 patent. *See* Shiang Decl., Ex. 8. Second, on December 2, 2002, Foley provided an opinion on infringement with respect to the '151 patent. *See* Shiang Decl., Ex. 1. Finally, in or about February 2005, Foley provided an update on the infringement opinion. *See id.*, Ex. 2. Beth Burrous was the author of the formal opinions. *See* Burrous Decl. ¶ 4 ("As intellectual property counsel for Insmed I prepared opinion letters for Insmed related to the U.S. Patent Nos. 6,331,414 and 5,187,151 that I understand have been produced in this case."). Brian McCaslin assisted with the preparation of the formal opinions. *See* McCaslin Decl. ¶ 4.

Apparently, even after Judge Wilken's order in which she held that Defendants infringed three claims of the '414 patent, Defendants continued to market the iPlex™ product. *See* Reply at 1-2.

## II. **DISCUSSION**

Currently pending before the Court is Plaintiffs' motion on the scope and procedure of willfulness discovery and Defendants' cross-motion to quash or limit the scope of subpoenas. There

are three issues raised in Plaintiffs' motion: (1) whether Defendants' waiver of attorney-client privilege (because of their assertion of the advice-of-counsel defense) should extend to advice given by Foley as trial counsel; (2) whether Plaintiffs should be permitted to take six additional depositions as part of willfulness discovery and re-open two depositions; and (3) whether the scope of willfulness discovery should be limited to the documents that Defendants produced to Plaintiffs on July 17, 2006.  In turn, Defendants' motion raises the question of what discovery should be permitted with respect to Plaintiffs' subpoenas directed to three law firms -- namely, Foley, WilmerHale (formerly Hale & Dorr), and Sterne, Kessler, Goldstein & Fox -- who provided opinions on the patents at issue.

A.   Advice from Foley

   1.   *EchoStar*

Federal Circuit law governs the issue of privilege and discoverability arising from assertion of the advice-of-counsel defense.  *See In re EchoStar Comms. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006) ("[Q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law.").  Plaintiffs argue that, because Defendants have asserted the advice-of-counsel defense, Plaintiffs are entitled to all advice given by Foley which would include (1) advice provided as trial counsel, not just opinion counsel, and (2) advice provided after the filing date of the complaint, especially since infringement by Defendants did not occur until after the complaint was filed and Defendants continued to sell the iPlex™ product even after Judge Wilken's order finding infringement.  Plaintiffs assert that the above is justified in light of the recent Federal Circuit opinion *In re EchoStar*.

In response, Defendants claim that they have produced documents that came after the filing of the complaint consisting of communications between opinion counsel and Defendants, *see* Opp'n at 11 n.3, so that the only issue here is whether waiver should extend to trial counsel.  Defendants argue that *EchoStar* did not address this specific issue.  Defendants further argue that Foley opinion counsel was walled off from the Foley trial team and thus should be treated separately.

There does not appear to be any dispute that Defendants have, as they assert, produced documents that post-date the complaint to the extent they involve opinion counsel.  Thus, as

Defendants contend, the only question for the Court is whether the waiver by Defendants, because of their assertion of the advice-of-counsel defense, should reach trial counsel.[1] The burden is on Defendants to establish nonwaiver. *See In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."); *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (identifying nonwaiver as one element of the attorney-client privilege and stating that "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege"); *Weil v. Investment/Indicators, Research & Mgmt.*, 647 F.2d 18, 25 (9th Cir. 1981) ("One of the elements that the asserting party must prove is that it has not waived the privilege.").[2]

The starting point in resolving this discovery dispute is *EchoStar*. In *EchoStar*, TiVO sued EchoStar for infringement of the '389 patent. *See EchoStar*, 448 F.3d at 1297. "Prior to the filing of the action, EchoStar relied on advice of in-house counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it." *Id.* After EchoStar asserted the defense of reliance on the advice of counsel, TiVO sought production of, *inter alia*, documents in the possession of Merchant & Gould. *See id.* The Federal Circuit made two rulings with respect to these documents.

First, regarding the attorney-client privilege, the court held that, "when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould." *Id.* at 1299.

---

[1] At the hearing, Plaintiffs conceded that the scope of Defendants' waiver with respect to Foley trial counsel should be defined by the subject matter of the advice given by Foley opinion counsel -- *i.e.*, infringement and invalidity on the matters which were the subject of advice for which Defendants elected to waive the privilege, not unenforceability.

[2] *See also* Paul R. Rice, Attorney-Client Privilege in the United States § 9:20, at 52-53 (2d ed. 1999) (stating that "[t]he prevalent, albeit unstated, practice appears to be to impose the initial burden of establishing the basic elements on the privilege proponent"; that, "[o]nce the proponent does so, the burden of going forward with evidence shifts to the opponent to establish a prima facie case of waiver"; and that, "[i]f the privilege opponent succeeds in making such a showing, the burden of going forward with evidence shifts back to the proponent to rebut the prima facie case by demonstrating that the privilege is still viable").

1    Second, regarding the work product privilege, the court held that waiver did not reach
2 attorney work product that was not communicated to the client because "[i]t is what the alleged
3 infringer knew or believed, and by contradistinction not what other items counsel may have prepared
4 but did not communicate to the client, that informs the court of an infringer's willfulness." *Id.* at
5 1303.  In arriving at this conclusion, the court commented that, "[b]y asserting the advice-of-counsel
6 defense to a charge of willful infringement, the accused infringer and his or her attorney do not give
7 their opponent unfettered discretion to rummage through all of their files and pillage all of their
8 litigation strategies." *Id.*

9    In addition, in discussing the work product privilege, the Federal Circuit addressed the
10 temporal limits to waiver.  Specifically, the court rejected such limits, stating that, while it "may be
11 true" that waiver "does not extend to advice and work product given after litigation began . . . when
12 the work product is never communicated to the client, it is not the case when the advice is relevant
13 to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation."
14 *Id.* at 1303 n.4.

15    Plaintiffs argue that, under *EchoStar*, waiver must extend to Foley as trial counsel.  Plaintiffs
16 rely in particular on the language in *EchoStar* that waiver applies to "*any* attorney-client
17 communications relating to the same subject matter," *id.* at 1299 (emphasis added), and to advice
18 and work product given *after* litigation has begun.  While this language broadly read could support a
19 waiver that reaches trial counsel, as should be clear from the above summary, the Federal Circuit did
20 consider or address the specific issue of whether waiver should extend to trial counsel.  That issue
21 apparently was not before the court.[3]

---

[3] Plaintiffs still insist that the Federal Circuit would extend waiver to trial counsel because, in *EchoStar*, the court cited approvingly a district court case that found such waiver. *See Akeva LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003) ("[A]ll opinions received by the client relating to infringement must be revealed, *even if they come from defendants' trial attorneys*, and even if they pre-date or post-date the advice letter of opinion counsel.") (emphasis added).

The Court is not persuaded by this argument.  Simply because the Federal Circuit cited *Akeva* in support of certain conclusions does not mean that it wholesale adopted every holding in *Akeva*. *But see Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C 2036, 2006 WL 2037356, at *5 n.1 (N.D. Ill. July 14, 2006) (acknowledging that "the fact scenario presented to the *EchoStar* court did not involve production of materials by trial counsel" but concluding that the reasoning in *EchoStar* and the supporting citation to *Akeva* "indicate[] that the Federal Circuit would extend this waiver to all attorneys other than those

In the wake of *EchoStar*, some courts have concluded that waiver should extend to trial counsel, while other courts have disagreed; still others have found waiver but only on a limited basis. In short, courts that have considered the issue of waiver with respect to trial counsel have not arrived at any consistent rulings. *See Affinion Net Patents, Inc. v. Maritz, Inc.*, No. CIV. A. 04-360-JJF, 2006 WL 2096712, at *1 (D. Del. July 28, 2006) (finding that defendant waived attorney-client privilege "as to communications with 'litigation counsel,' and any other counsel"); *Ampex Corp. v. Eastman Kodak Co.*, No. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *9 (D. Del. July 17, 2006) (rejecting argument that waiver should extend to trial counsel as that would "demolish[] the practical significance of the attorney-client privilege, a result obviously at odds with other comments in *EchoStar*"); *Beck*, 2006 WL 2037356, at *5 ("*EchoStar* did not disturb the approach we adopted in [a previous case] which extends the waiver to attorney-client privilege and certain work-product material involving trial counsel."); *Informatica Corp. v. Business Objects Data Integration*, No. C 02-3378 JSW (JL), 2006 WL 2038461, at *8 (N.D. Cal. July 14, 2006) (finding that "BODI waived privilege for both pre- and post-filing pertinent attorney-client communications and work product" and that "it is immaterial whether BODI's opinion counsel and trial counsel are from the same firms, different firms or are even the same person"); *Intex Recreation Group v. Team Worldwide Corp.*, No. 04-1785 PLF/DAR, 2006 WL 2023552, at *6 (D.D.C. July 14, 2006) (adopting a "middle ground" approach under which "waiver extends only to those trial counsel work product materials that have been communicated to the client and contained conclusions or advice that contradict or cast doubt on the earlier opinions"); *Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-LJM-WTL, 2006 U.S. Dist. LEXIS 34023, at *19 (S.D. Ind. May 26, 2006) ("There is no indication that the *EchoStar* court intended to extend this waiver to communication of trial counsel or to work product of trial counsel."), *withdrawn* 2006 U.S. Dist. LEXIS 47852 (S.D. Ind. July 14,

---

who provided the advice on which the defendant relies, irrespective of whether the other attorneys are trial counsel"). Moreover, arguably, the Federal Circuit did not agree entirely with the *Akeva* district court in certain respects. *Compare EchoStar*, 448 F.3d at 1303 (holding that "work product, which is never communicated to the client, is not discoverable"), *with Akeva*, 243 F. Supp. at 424 (finding that there should be a "broad waiver rule requiring full disclosure of documents, even if they were not given to the client," if "opinion counsel is trial counsel").

6

2006) (withdrawing opinion because court "had been under the impression that Dorel had never sought additional opinions of counsel post-filing").

### 2. Defendants' Reliance on the Advice of Trial Counsel

Before addressing the applicable legal standard in analyzing the scope of any waiver as to trial counsel's advice, the Court must first address the threshold question whether Defendants relied on the advice of trial counsel in deciding to launch the accused product. Although there is no direct evidence that Defendants relied on the advice of the Foley trial team, there is strong circumstantial evidence that they did based on the timing of the release of the accused product. As noted above, Defendants launched the iPlex™ product in May 2006 -- *i.e.*, almost a year and a half after the lawsuit was first filed. Given this timing, the views of trial counsel on the strengths and weaknesses of Defendants' positions on infringement and invalidity were likely considered by Defendants before they released the iPlex™ product. Notably, nowhere in their papers and at no point during oral argument did Defendants deny that they relied on the views and advice of Foley trial team on the issues of infringement and invalidity in deciding to launch the accused product. Although Defendants claim that trial counsel had no role in the formulation of advice from opinion counsel, the declarations of Foley trial counsel only establish that the trial team did not have any role in preparing, drafting, or performing an analysis for "*inclusion* in any opinion letters." Revised Shatzer Decl. ¶¶ 5-8 (emphasis added); Best Decl. ¶ 3. The declarations do not state that the trial team never voiced any views about the opinion letters or that the trial team never commented to the client on the likelihood of success on the issues of infringement and invalidity.[4]

Moreover, it is significant that, even though the decision to launch the iPlex™ product was an important one, particularly in light of Plaintiffs' lawsuit against Defendants, Defendants do not appear to have solicited the advice of Foley opinion counsel as to whether the release of the product was advisable. In fact, based on the time entries submitted by Defendants, between the date that Plaintiffs filed suit and the date that Defendants released the accused product, opinion counsel did little or no work as opinion counsel. In early 2005, opinion counsel provided an update for the

---

[4] Had trial counsel claimed that it never provided any comments on the likelihood of success, the Court would be hard pressed to find such testimony credible.

7

infringement opinion but, in the months preceding the launch of the iPlex™ product, there do not appear to be any time entries that reflect work by opinion counsel as opinion counsel. *See* Supp. Shatzer Decl., Ex. B. Based on this evidence, it is a fair inference that, prior to the launch, Defendants considered input from trial counsel during this crucial time period.

For the foregoing reasons, the Court finds that Defendants relied on the advice of trial counsel and, because of this reliance, there is a basis for extending waiver to trial counsel given Defendants' assertion of the advice-of-counsel defense. The Court emphasizes that it is not holding here that waiver with respect to trial counsel necessarily requires a finding of reliance on the advice of trial counsel.[5] It need not reach that question since it finds there was in fact such reliance here. *Cf. Akeva*, 243 F. Supp. 2d at 419-20 (finding waiver reached trial counsel when defendants admitted that they relied not only on opinion counsel but also on trial counsel).

Furthermore, there are additional reasons supporting a finding that waiver extends to Foley trial counsel. Defendants' decision to hire opinion counsel and trial counsel from the same firm entailed a certain amount of risk. *See Ampex*, 2006 U.S. Dist. LEXIS 48702, at *11 n.4 (noting that the case under consideration did "not involve a party choosing to use an attorney as both opinion counsel and trial counsel"; adding that "[t]hat choice involves an unfortunate blending of roles that is, thankfully, rare"). Defendants contend that there was no risk because pre-*EchoStar* case law in this District immunized trial counsel from waiver. However, in *Sharper Image Corp. v. Honeywell Internat'l, Inc.*, 222 F.R.D. 621 (N.D. Cal. 2004), the court actually allowed waiver when a law firm had a dual role as opinion counsel and trial counsel (albeit because that firm was only litigation counsel for a short period and "nothing of real litigation moment" occurred during that time), *id.* at 641-42, and, in *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D. Cal. 2004), opinion counsel and trial counsel were not from the same firm. Although Defendants contend Foley opinion counsel was walled off from the trial team and thus should be treated separately, the Court notes that Exhibit 8 of the revised Shatzer declaration as well as the time records of the Foley

---

[5] At the hearing, Plaintiffs repeatedly argued that reliance on trial counsel's advice is not necessary because, in *EchoStar*, the Federal Circuit held that EchoStar's assertion of the advice-of-counsel defense waived privilege with respect to the advice of Merchant & Gould even though EchoStar elected not to rely on that advice and instead decided to rely on the advice of in-house counsel only.

8

1  attorneys suggest that the wall between opinion and trial counsel was not impenetrable.  There was
2  at least some overlap and communication between the two.

3          3. <u>Policy Considerations Regarding Waiver and Scope of Waiver</u>

4      Having concluded that Defendants' reliance on the advice of trial counsel is a basis for
5  extending waiver to trial counsel, the question remains whether such a waiver is appropriate in view
6  of policy considerations and, if so, what the scope of that waiver should be.  Not surprisingly,
7  Plaintiffs argue that, as a matter of fairness, waiver should extend to trial counsel, *see Akeva*, 243 F.
8  Supp. 2d at 423 ("The infringer may not pick and choose between what opinions will be relied upon
9  and which will be discarded."), and that the scope of the waiver should be as broad as possible,
10 covering all documents and testimony except that directly related to trial strategy, *see id.* at 424
11 (allowing for redaction of documents that contain trial strategy).  Defendants contend that, because
12 trial counsel serves a special role, the functions of which lie at the core of the work product doctrine
13 and attorney-client privilege, waiver should not extend to such counsel, but that, if there is a waiver,
14 it should be as narrowly construed as possible.

15     In deciding whether waiver with respect to trial counsel is appropriate, the Court must
16 balance two competing policy considerations.  First is the consideration that "[t]he overarching goal
17 of waiver . . . is to prevent a party from using the advice he received as both a sword, by waiving
18 privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *EchoStar*,
19 448 F.3d at 1303.  In other words, fairness drives the waiver analysis.  To permit a party to shield a
20 nonfavorable opinion of trial counsel would permit the party to pick and choose to disclose only
21 supportive advice from opinion counsel.  Moreover, in a patent case, the party against whom waiver
22 is sought makes the voluntary decision to rely on advice of counsel, and the Patent Local Rules of
23 this District afford the party a full and fair opportunity to evaluate the circumstances before making
24 an election on whether or not to rely on the defense.  *See* Pat. L.R. 3-8 (providing for willfulness
25 disclosures "50 days after service by the Court of its Claim Construction Ruling").  Since the waiver
26 is entirely voluntary, an argument can be made that the waiving party must assume all the risks in
27 accepting the benefit of its election.

28

9

The Court must also consider, however, the well-established policies underlying the attorney-client and work product privileges. As noted by Judge Brazil of this District, "in patent litigation between competitors, disabling a defendant from having a confidential relationship with its lead trial counsel about matters central to the case would cause considerable harm to the values that underlie the attorney-client privilege and the work product doctrine." *Sharper Image*, 222 F.R.D. at 643; *see also Collaboration Properties*, 224 F.R.D. at 476-77 (discussing *Sharper Image*); *see also Terra Novo, Inc. v. Golden Gate Prods., Inc.*, No. C-03-2684 MMC EDL, 2004 U.S. Dist. LEXIS 20429, at *7 (N.D. Cal. Oct. 1, 2004) ("After litigation has commenced, the dangers inherent in invading the confidentiality of the attorney-client privilege are magnified."). Notably, even the Federal Circuit in *EchoStar* underscored that, "[b]y asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *EchoStar*, 448 F.3d at 1303.

As indicated above, in the wake of *EchoStar*, courts have struggled with striking the proper balance between the above policy considerations in deciding whether waiver should extend to trial counsel. The same is true with respect to cases that pre-dated *EchoStar*. Like the cases that post-date *Echostar*, the cases that pre-date *EchoStar* are not uniform; some have found no waiver, others have, while still others have found waiver but only on a limited basis.

In this District, there are at least two pre-*EchoStar* cases that support Defendants' position that waiver should not extend to trial counsel -- *i.e.*, *Sharper Image* and *Collaboration Properties* (although, as noted above, in *Sharper Image*, the court permitted waiver with respect to a law firm that briefly served as trial counsel). *EchoStar* does not clearly invalidate either case since, as stated above, it did not address the specific issue of waiver with respect to trial counsel.

Pre-*EchoStar* cases in which a waiver with respect to trial counsel was found include *Akeva* as well as, *e.g.*, *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98, 105 (S.D.N.Y. 2004) (requiring production of "all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions").

Finally, pre-*EchoStar* cases supporting a limited waiver can be found at *Intex Recreation Corp. v. Metalast, S.A.*, No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149 (D.D.C. 2005); *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212 (N.D. Ill. 2001); *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 283 F. Supp. 2d 1000 (S.D. Ind. 2003); and *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361 (D. Mass. 1995). In these cases, the courts advocated a "middle ground" approach to waiver with respect to trial counsel; that is, a waiver would be appropriate to the extent the advice or work product of trial counsel was communicated to the client and "contained conclusions or advice that contradict or cast doubt on the earlier opinions."[6] *BASF*, 283 F. Supp. 2d at 1006.

Taking into account the pre- and post-*EchoStar* cases as well as *EchoStar* itself, the Court concludes that, although *EchoStar* does not expressly overrule those cases that decline to extend waiver to trial counsel, the thrust of the case is that a blanket immunity for trial counsel is not appropriate. The Federal Circuit's rejection of a temporal limit on waiver -- *i.e.*, that a waiver can extend to advice and work product given after litigation begins -- suggests particular solicitude that must be paid to the policies that favor broad waiver.

Yet the importance of protecting attorney work product and communication between attorney and client in the heat of litigation should not be lightly disregarded. *EchoStar* cautioned against requiring the accused to "give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *EchoStar*, 448 F.3d at 1303. While shielding uncommunicated work product provides some protection, it still exposes critical communication between trial counsel and the client necessary to litigation strategy decisions. The Court thus eschews the extreme approaches of finding no waiver or complete waiver. A more refined balance is warranted.

---

[6] A case in this District in which a limited waiver was found but which did not employ the middle ground approach is *Terra Novo*. *See Terra Novo*, 2004 U.S. Dist. LEXIS 20429, at *8 (acknowledging litigation counsel's claim that "he had not voiced an opinion on invalidity at [a] meeting" involving litigation counsel, opinion counsel, and client, but concluding that "the assertion of the advice of counsel defense waives any communications between Opinion Counsel and Litigation Counsel").

In this regard, as noted above, some courts have adopted a "middle ground" approach wherein only advice of trial counsel that contradicts or casts doubt on the advice of opinion counsel is subject to disclosure. *See, e.g.*, *Intex*, 2006 WL2023552, at *6, and cases cited *supra*. While the middle ground approach to waiver is commendable because it expressly acknowledges the competing policy considerations and seeks (in theory) a reasonable balance, the Court declines to adopt that approach because it presents practical problems. For example:

(1) What constitutes sufficient doubt that makes disclosure necessary?

(2) Although trial counsel is an officer of the court, can trial counsel be trusted to make the unilateral decision of what contradicts or casts doubt on the advice of opinion counsel -- particularly, when trial counsel is still an advocate and is deciding whether its own advice should be disclosed? *Cf. D.O.T. Connectors v. J. B. Nottingham & Co.*, No. 4:99cv311-WS, 2001 U.S. Dist. LEXIS 739, at *8 n.3 (N.D. Fla. Jan. 22, 2001) ("Some courts have limited . . . disclosure to opinions of trial counsel which 'cast doubt' on the opinion which is the basis for the defense. This is an unworkable limitation as it requires counsel for defendant to make a subjective judgment as to the probative weight of the second opinion."). Even if trial counsel can be trusted, must trial counsel review each and every single document given to the client or which discusses a communication with the client? And even if, in general, trial counsel can be trusted, there are still likely to be grey areas as to whether certain disclosures should be made, in which case must the court intervene and review each such document in camera even if it is only marginally probative?

(3) How would the middle ground approach apply in the context of depositions of the trial counsel or client? *See Akeva*, 243 F. Supp. 2d at 423 n.6 (pointing out that, in a case favoring the middle ground approach, the "court only dealt with documents and the work product protection issue" while, "[i]n the instant case, the Court has before it the issue of depositions, and that issue only concerns the waiver of attorney-client privilege, not work product protection").

Moreover, practical difficulties aside, what is the utility of permitting withholding of positive advice? *See Convolve*, 224 F.R.D. at 104-05.

Rather than adopting the middle ground approach based on the favorability of the advice, the Court adopts a middle approach that seeks to preserve in some fashion trial strategy while requiring disclosure of communications that are central and material to Defendants' decision to engage in allegedly infringing activity.  Waiver of trial counsel communication with the client should apply to documents and communications that are most akin to that which opinion counsel normally renders -- *i.e.*, documents and communications that contain opinions (formal or informal) and advice central and highly material to the ultimate questions of infringement and invalidity (the subject matter of the advice given by Foley opinion counsel).

While this approach would include the most significant opinions and views expressed by trial counsel to Defendants (upon which a reasonable inference of reliance may be drawn), it would exclude lower level documents and communications that are more akin to discussions of trial strategy.  For instance, a communication about the likelihood of success on infringement in light of the venue and probably jury pool is of central materiality to the ultimate question of infringement, and should therefore be produced.  However, a discussion about the tactics of jury selection, the theme of the opening statement to the jury, etc. should not be disclosed.  Likewise, predictions about how the judge will construe key claims and their impact on the outcome of the case should be produced, but discussions about which arguments should be made to the judge should not.  The dividing line revolves around the degree of materiality to the client's decision to launch the accused product (and continue its sale).  Only that advice and work product of trial counsel that is reasonably central to that decision -- and which presumably would carry the same kind of weight that advice from opinion counsel normally would -- is waived.

In this regard, all other things being equal, any negative opinions or views of trial counsel should be presumed to have a higher degree of materiality since one would expect the client would pay particularly close attention to such negative advice.  Nonetheless, the degree of materiality to the ultimate question of invalidity or infringement would still have to be assessed even as to these negative communications.  Thus, for instance, a report on a deposition that states a favorable deponent was not as helpful as hoped would likely not be producible, unless the deponent were a

13

key witness testifying on a potentially dispositive matter such that the testimony would likely have a central and material effect on the outcome of the case.

Under this middle ground approach, Plaintiffs are given reasonable access to "opinion-type" communications with trial counsel (including negative assessments) while preventing the opponent from rummaging through trial counsel's litigation files.  While this approach requires line-drawing and judgment and carries inevitable administrative burden and potential disputes, the criteria established herein are likely to be easily discernible for the vast majority of documents.  Moreover, it is tailored to accommodate both competing policy considerations the Court must balance in this context.

Accordingly, the Court orders Defendants to produce documents consistent with the above analysis by August 21, 2006.  In addition, as a means of insuring proper application of this criteria without placing an undue burden on defense counsel, the Court further orders Defendants to provide a privilege log identifying documents communicated between trial counsel and Defendants (or documents that expressly reference such communications) during the months of March, April, and May, 2006, just before and during the launch of iPlex™.

B.      Six Additional Depositions and Re-Opening of Two Depositions

Plaintiffs have taken so far nine out of the ten depositions provided for by the Federal Rules and agreed upon by the parties.  *See* Mot. at 9.  Plaintiffs intend to use the tenth deposition as part of willfulness discovery and ask for permission to take five additional depositions as part of willfulness discovery.  Plaintiffs further ask for permission to re-open the depositions of Dr. Geoffrey Allan (the current CEO of Defendant Insmed) and Dr. Andreas Sommer (the former CEO of Defendant Celtrix) to do "'reasonable follow-up' now that Defendants have waived." *Id.* at 5.

In response, Defendants argue that Plaintiffs do not need six total depositions on willfulness discovery, plus a re-opening of two more depositions.  Defendants do not contest Plaintiffs' right to take a tenth deposition but argue that beyond that Plaintiffs should be limited to the depositions of the author of the Foley opinions (Ms. Burrous) and the author of the Hale & Dorr opinions (Hollie Baker) and the deposition of a 30(b)(6) witness(es) on the topic of reliance by Defendants on those opinions.

14

Neither Plaintiffs nor Defendants' arguments are entirely convincing. As a general matter, Defendants' attempt to circumscribe the number of depositions is not fair to Plaintiffs given that Plaintiffs had no control over how many firms provided opinions to Defendants and how many of Defendants' employees were privy to the opinions. On the other hand, Plaintiffs are asking for more than just a couple of additional depositions, and Plaintiffs cannot expect to depose each and every person that has or may have relevant information.

Taking into account both of these factors and given the number of attorneys and contact persons involved, the Court concludes that there is good cause for Plaintiffs to take four additional depositions past the ten-deposition limit -- in other words, Plaintiffs will have a total of five depositions as part of its willfulness discovery. In addition, Plaintiffs shall be permitted to re-depose Dr. Allan and Dr. Sommer since Plaintiffs would have questioned them about the opinions of counsel at the time they first took their depositions if they had been able. The depositions of Dr. Allan and Dr. Sommer shall be limited in scope to the documents produced by Defendants on July 17, 2006, and that which reasonably flows therefrom including the input of these documents on their state of mind. *See* Part II.C, *infra*.

C.      Scope of Willfulness Discovery

Defendants argue that Plaintiffs are not entitled to discovery beyond the documents they produced to Plaintiffs on July 17, 2006: "Because Plaintiffs have already had an opportunity to take full discovery relating to willfulness except for the limited issue of opinions of counsel, the Court should not grant Plaintiffs a second bite at the apple in this limited discovery period." Opp'n at 16. Plaintiffs contend that "Defendants are attempting to preclude Plaintiffs from obtaining any discovery as to Defendants' state of mind, seeking instead to limit the questioning to just the advice rendered." Mot. at 10.

Although Plaintiffs were able to conduct discovery into the issue of willfulness, including Defendants' state of mind, prior to Defendants' decision to assert the advice-of-counsel defense, Plaintiffs may take discovery into anything that reasonably flows from the documents recently produced after assertion of the defense. Plaintiffs should not be rigidly limited to asking about the documents only. Thus, *e.g.*, Plaintiffs would not be barred from asking how "information in

15

1 combination with the opinions of counsel now disclosed informed Defendants' state of mind."
2 Reply at 11.

3 D.     Subpoenas of Law Firms

4 Plaintiffs have subpoenaed three law firms: Foley, WilmerHale (presumably, formerly Hale
5 & Dorr), and Sterne, Kessler, Goldstein & Fox.  The subpoenas for Foley and WilmerHale were
6 issued by this Court.  The subpoena for Sterne was issued by the District Court for the District of
7 Columbia.[7]  Each of the three subpoenas contains six document requests.

8 Defendants argue that, to the extent Defendants have already produced documents to
9 Plaintiffs, "the subpoenas are burdensome and harassing, and should be quashed."  Mot. at 21.
10 However, absent a representation that Defendants asked the law firms for the relevant documents
11 and the law firms turned them over to Defendants, it is possible that the law firms have different
12 documents in their possession, custody, or control -- even taking into account that the Federal
13 Circuit has said that only work product actually communicated to Defendants is relevant.  *See*
14 *EchoStar*, 448 F.3d at 1305.

15 Defendants further argue that the subpoenas are overbroad in that they go "much further than
16 the proper scope of willfulness discovery in connection with opinions of counsel."  Opp'n at 21.  To
17 the extent Defendants mean by this statement that *EchoStar* limits willfulness discovery to
18 information that is actually communicated by counsel to clients, the Court agrees.  Consistent with
19 *EchoStar*, only those documents given to Defendants or which, on their face, discuss
20 communications with Defendants, need be produced.  *See EchoStar*, 448 F.3d at 1304 (finding
21 waiver "for any document or opinion that embodies or discusses a communication to or from it
22 concerning whether that patent is valid, enforceable, and infringed by the accused").

23 Accordingly, the Court shall not quash the subpoenas to the law firms but shall limit their
24 scope as detailed above.  In addition, the Court shall allow the law firms to provide a certification
25 under oath that all responsive documents have been produced either by Defendants or the law firms

---

[7] Defendants contend that, although the last subpoena was issued by another district court, this Court still "has jurisdiction over [the subpoena] under Rule 26(c)," which allows for protective orders. *See* Opp'n at 20.  Plaintiffs have not disagreed with this contention.

16

instead of producing duplicate copies already produced herein. The subpoenas shall be complied with by August 21, 2006.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion is granted in part and denied in part and Defendants' motion is granted in part and denied in part.

This order disposes of Docket Nos. 514 and 524.

IT IS SO ORDERED.

Dated: August 10, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge