**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., a Delaware corporation, and TERCICA, INC., a Delaware corporation, | No. C 04-5429 CW |
| Plaintiffs, | PRELIMINARY JURY INSTRUCTIONS |
| v. | |
| INSMED INCORPORATED, a Virginia corporation; CELTRIX PHARMACEUTICALS, INC., a Delaware corporation; and INSMED THERAPEUTIC PROTEINS, INC. a Colorado Corporation, | |
| Defendants. | |
| ————————————————/ | |
| AND RELATED COUNTERCLAIMS. | |
| ————————————————/ | |

### Duty of the Jury

Ladies and Gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

You have two duties as jurors. Your first duty is to decide the facts from the evidence in the case. That is your job and

yours alone.  Your second duty is to apply the law that I give you to the facts.  You must follow these instructions, even if you disagree with them.  Each of the instructions is important, and you must follow all of them.  Perform these duties fairly and impartially.  Do not allow sympathy, prejudice, fear or public opinion to influence you.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

### What Is Evidence

The evidence from which you are to decide what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which have been received into evidence; and

3. any facts to which the lawyers stipulate.

### What is Not Evidence

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

1.  statements and arguments of the attorneys;

2.  questions and objections of the attorneys;

3.  testimony that I instruct you to disregard; and

4.  anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

### Evidence for limited purpose

Some evidence may be admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for

2

a limited purpose, you must consider it only for that limited purpose and for no other.

### Redacted Information

At times during this trial you may see documents presented as evidence or as demonstrative aids that have been "redacted," which means that they have had portions of text blocked out so that you cannot see those portions of the text. This is a method used by the parties to protect legally privileged information, such as information that is privileged and confidential between a party and its attorneys. No adverse inference should apply as a result of any such redactions. In fact, if the parties do not properly redact privileged information at trial, the privilege may be considered "waived," and the parties may be required to reveal additional related privileged information. Parties are therefore being properly cautious in using the redaction technique. Redactions of this type are routinely utilized by the parties in litigation such as this and should not be construed as an attempt to conceal information.

### Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

3

United States District Court

For the Northern District of California

### Ruling On Objections

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a questions or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answer, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and may not guess what the answer might have been.

Sometimes I may order that the evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

### Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness' memory;

3. the witness' manner while testifying;

4. the witness' interest in the outcome of the case and any bias or prejudice;

4

5. whether other evidence contradicted the witness' testimony;

6. the reasonableness of the witness' testimony in light of all the evidence; and

7. any other facts that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

**Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

**United States District Court**

For the Northern District of California

### No Transcript Available to Jury

At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

### Taking Notes

If you wish, you may take notes to help you remember what witnesses said.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you so that you do not hear other answers by witnesses.  When you leave, your notes should be left in the jury room.

Whether or not you take notes, you should rely on your own memory of what was said.  Notes are only to assist your memory. You should not be overly influenced by the notes.

### Questions to Witnesses by Jurors

While it is not customary for a juror to ask a question of a witness, if you wish to do so, put the question in writing and hand it to the clerk.

The court and counsel will review your question.  Do not be concerned if the question is not asked.

Do not discuss your question with anyone, including the clerk. Remember that you are not to discuss the case with other jurors until it is submitted for your decision.

### Recesses

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury,

by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these recesses is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these recesses to a minimum.  I may not always grant an attorney's request for a recess.  Do not consider my granting or denying a request for a recess as any indication of my opinion of the case or of what your verdict should be.

### Overview of Applicable Law

I will now give you a brief overview of the patent law applicable to this case.  I will provide you with more detailed instructions on the applicable patent law at the close of evidence.

### What a Patent is and How One is Obtained

This case involves a dispute relating to three United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right for seventeen years from the date the patent issued to prevent others from making, using, offering to sell, or selling the patented invention within

7

the United States or from importing it into the United States without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the

applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus would be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which is confidential between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material is kept secret between the applicant and the PTO for

some time, often until the patent is issued, when it becomes available to the public.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all other prior art that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

**Patents at Issue and the Parts of a Patent**

There are three patents at issue in this case.  Sometimes we will refer to them collectively as "the patents-in-suit" or "the patents-at-issue."  The three patents are identified by their numbers as follows: United States Patent Number 5,187,151, U.S. Patent No. 5,258,287, and U.S. Patent No. 6,331,414.  The patent numbers are identified in the upper right hand corner on the first page of each patent.  For convenience, the parties and I will refer to each of the patents-in-suit by the last three numbers of the patent number -- for example, United States Patent Number 5,187,151 will be referred to as the '151 patent. Likewise, the other two will be referred to as the '287 patent and the '414 patent.

A patent includes two basic parts, a specification of the invention and the patent claims.  The specification may include

10

drawings.

You have been provided with copies of the patents-in-suit. Please refer to the '151 patent as an example as I identify its different sections.

The cover page of the '151 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventors' names, the filing date, the assignee, who is a person to whom a patent has been assigned, and a list of the prior art publications considered by the Patent Office before deciding to issue the patent, which continues onto the following page.

The specification of the '151 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next are drawings, which appear as Figures 1 to 9 on the next ten pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.

The written specification of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written specification of the '151 patent begins at column 1, line 1, and continues to column 14, line 2. It includes a background section, a summary of the

11

invention, and a detailed description of the invention, including some specific examples.  The specification ends with one or more numbered paragraphs.  These are called the claims.  The claims may be divided into a number of parts or steps, referred to as "claim limitations."  In the '151 patent, the claims begin at column 14, line 4, and continue to the end of the patent, at column 14, line 55.

### Summary of Contentions

To help you follow the evidence, I will now give you a summary of the positions of the parties.  The Plaintiffs in this case are GENENTECH, INC. and TERCICA, INC.  For convenience, I will refer to the Plaintiffs collectively as "Plaintiffs" or "Genentech".  The Defendants in this case are INSMED INCORPORATED, CELTRIX PHARMACEUTICALS, INC. and INSMED THERAPEUTIC PROTEINS, INC. For convenience, I will refer to the Defendants collectively as "Defendants" or "Insmed".

This case involves three United States patents obtained by the named inventors listed on each patent, and transferred by the inventors to Genentech.  Genentech then exclusively licensed rights to the three patents to Tercica.  The patents involved in this case are:

(1)  United States Patent Number 5,187,151, or the '151 patent, which lists Ross G. Clark and Venkat R. Mukku as the inventors.

12

(2) United States Patent Number 6,331,414, or the '414 patent, which lists James M. Lee and Axel Ullrich as the inventors.

(3) United States Patent Number 5,258,287, or the '287 patent, which lists Robert C. Baxter and William I. Wood as the inventors.

Genentech seeks money damages from Insmed for allegedly directly infringing the '287 and '414 patents by making, using, selling, and offering for sale a product or methods that Genentech argues are covered by claims 1, 6-8, 17 and 20 of the '287 patent, and claims 1-4 and 9-10 the '414 patent, and indirectly infringing claims 1 and 4-5 of the '151 patent by inducing or contributing to the infringement of another.  These are the asserted claims of the '151, '287, and '414 patents.  The product that is alleged to infringe is a medication called iPlex, and the methods that are alleged to infringe are the methods of using and making iPlex.

It has already been determined in another proceeding that Defendants have literally infringed claims 1, 2, 9 and 10 of the '414 patent.  You need not be concerned with that determination.

Insmed denies that it has infringed the asserted claims of the patents-in-suit.  Insmed contends that they cannot infringe the patents in any event because the patents are invalid or unenforceable.  Specifically, Insmed contends that the asserted claims of the '287 and '414 patents are invalid for lack of enablement and that the asserted claims of the '414 patent are invalid for lack of written description.

**United States District Court**

For the Northern District of California

Your job is to decide (1) whether the asserted claims of the '151, '287 and '414 patents have been infringed and (2) whether any of the asserted claims of the '287 and '414 patents are invalid.

If any claim of the patents has been infringed and is not invalid, you will then need to decide the money damages to be awarded to Plaintiffs to compensate them for the infringement.  You will also need to decide whether the infringement was willful.

If you decide that any infringement was willful, you may not consider that decision in deciding on any damages award.  I will take willfulness into account later.

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

### Direct Infringement

To prove infringement, Genentech must prove that it is more likely than not that Insmed has infringed an asserted claim by making, using, selling, offering for sale a product or method that contains each requirement of that claim.

In this case, Genentech contends that Insmed infringes claims 1, 6-8, and 17 of the '287 patent, and claims 3 and 4 of the '414 patent.

I will explain direct infringement in more detail in my final instructions.

14

**United States District Court**

For the Northern District of California

### Indirect Infringement

As I mentioned previously, Genentech contends that Insmed has actively contributed to and induced infringement of claims 1, 4 and 5 of the '151 patent by another.  Insmed cannot contributorily infringe or induce infringement unless Genentech proves that a third party other than Insmed directly infringes the patent by making, using, selling, offering for sale or importing a product that includes all the requirements of an asserted claim.  If there is no direct infringement, Insmed cannot have contributed to infringement or induced infringement.

To prove contributory infringement, Genentech must persuade you that it is more likely than not that a third party other than Insmed directly infringed one or more of the asserted claims.  If you are so persuaded, Insmed committed contributory infringement if:

(1)  Insmed sold or supplied to the third party an important component that is a material part of the method;

(2)  The component is not a common component suitable for other substantial non-infringing use; and

(3)  Insmed supplied the component with knowledge of the '151 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

To prove inducing infringement, Genentech must persuade you that it is more likely than not that Insmed encouraged or

15

instructed a third party how to use or make a product or perform a process in a manner that you, the jury, find infringes the asserted claims; Insmed knew of the patent; Insmed knew or should have known that its encouragement or instructions would likely result in the third party doing that which you find to be an infringement of the asserted patent claims; and the third party infringed the asserted patent claims.

In this case, Genentech has alleged that Insmed induced infringement of claims 1, 4 and 5 of the '151 patent.  Genentech contends that the administration of iPlex to patients directly infringes the claims of the '151 patent, and that Insmed actively induces that infringement.

I will explain contributory infringement and inducing infringement in more detail in my final instructions.

### Willful Infringement

Genentech argues that Insmed has infringed the '151, '287 and '414 patents willfully.  To prove willful infringement, Genentech must persuade you that it is highly probable that:

A.    Insmed had actual knowledge of the patent; and

B.    Insmed had no reasonable basis for believing (1) that its alleged product or method did not infringe the patent or (2) that the patent was invalid or unenforceable.

I will explain how you decide willful infringement in more detail in my final instructions.

16

**Invalidity**

Insmed contends that the asserted claims of the '287 and '414 patents are invalid.  To prove invalidity of a patent claim, Insmed must persuade you that it is highly probable that the claim is invalid.

I will now instruct you on the invalidity issues that you will have to decide in this case.

**Written Description**

Insmed can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain an adequate written description of the claimed invention.  In the course of the prosecution of the patent application, the claims may be changed between the time the original patent application is first filed and the time the patent is finally granted.  An inventor may amend the claims in his or her original application or add new claims.  The changes may narrow the scope of the claims or may broaden their scope.  The purpose of the written description requirement is to make sure that the inventor had in mind the invention as claimed in the issued patent, at the time the application for the patent was originally filed.  The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.  A requirement in a claim need not be specifically

17

disclosed in the patent application as originally filed if persons of ordinary skill in the field would understand that the missing requirement is necessarily implied in the patent application as originally filed.

**Enablement**

Insmed can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain a description of the claimed invention that is sufficiently full and clear to enable persons of ordinary skill in the field to make and use the invention.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

The patent is enabling if it permits persons of ordinary skill in the field to make and use the invention without having to do excessive experimentation.  Some amount of experimentation to make and use the invention is allowable.  The factors you may consider in deciding whether the amount of experimentation necessary to make or use the invention is excessive include:

the time and cost of any necessary experimentation;

how routine any necessary experimentation is in the field;

whether the patent discloses specific working examples of the claimed invention;

the amount of guidance presented in the patent;

the nature and predictability of the field;

the level of ordinary skill in the field; and

18

the scope of the claimed invention.

Enablement is tested as of the date the original patent application was first filed.

I will explain in more detail how you decide the issues of written description in my final instructions.

### Inventorship

Insmed can meet its burden of proving that a patent is invalid by showing that it fails to meet the requirement to name all actual inventors and only the actual inventors.  This is known as the "inventorship" requirement.  To be an inventor, one must make a significant contribution to the conception of one or more claims of the patent.  Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent.  However, merely helping with experimentation by carrying out the inventor's instructions or explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.

### Damages

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Insmed infringed any valid claim of the asserted patents, you must then determine the amount of money damages to be awarded to Genentech to compensate it for

19

the infringement.

The amount of those damages must be adequate to compensate Genentech for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Genentech has the burden to persuade you of the amount of its damages.  You should award only those damages that Genentech more probably than not suffered.  While Genentech is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Genentech is not entitled to damages that are remote or speculative.

I will explain how you determine damages in more detail in my final instructions.

**Outline of Trial**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true

20

than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.

The parties will present evidence associated with each of the '151, '287, and '414 patents.  During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Genentech will present its evidence on its contention that claims 3 and 4 of the '414 patent and the asserted claims of the '151 and '287 patents have been and continue to be infringed by Insmed, and that the infringement of the '151, '287  and '414 patents has been and continues to be willful.  To prove infringement of any claim, Genentech must persuade you that it is more likely than not that Insmed has infringed that claim.  To persuade you that any infringement was willful, Genentech must prove that it is highly probable that the infringement was willful.  Genentech will also present its evidence regarding damages.

Insmed will go next and present its evidence that the asserted claims of the '287 and '414 patents are invalid.  To prove invalidity of any claim, Insmed must persuade you that it is highly probable that the claim is invalid.  In addition to presenting its evidence of invalidity, Insmed will put on evidence responding to

Genentech's infringement, willfulness, and damages evidence.

Genentech will then put on evidence responding to Insmed's evidence that the asserted claims of the '287 and '414 patents are invalid.  Genentech will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Insmed of non-infringement, lack of willfulness or damages.

Finally, Insmed will have the option to put on "rebuttal" evidence to any evidence offered by Genentech on the validity of the asserted claims of the '287 and '414 patents.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.  After that, you will go to the jury room to deliberate on your verdict.

United States District Court

For the Northern District of California

### Cautionary Instruction -- First Recess

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.  Do not read or listen to any news reports of the trial.  Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the clerk to give to me.

I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on such occasions.

### Limited Purpose of Evidence (If Applicable)

The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and for no other purpose.

### Use of Interrogatories of a Party

Evidence is now to be presented to you in the form of answers of one of the parties to written questions submitted by the other

23

side.   These answers have been given in writing and under oath,

before the actual trial, in response to questions which were

submitted in writing under established court procedures.   The

answers are entitled to the same consideration and are to be judged

as to credibility and weight, and otherwise considered by you

insofar as possible, as if the answers were made from the witness

stand.

### Stipulations of Fact

The parties have agreed to certain facts that have been stated

to you.   You should therefore treat these facts as having been

proved.

### Deposition as Substantive Evidence

When a person is unavailable to testify at trial, the

deposition of that person may be used at the trial.   A deposition

is the sworn testimony of a witness taken before trial.   The

witness is placed under oath to tell the truth and lawyers for each

party may ask questions.   The questions and answers are recorded.

Deposition testimony is entitled to the same consideration and

is to be judged, insofar as possible, in the same way as if the

witness had been present to testify.