CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GENENTECH, INC., a Delaware Corporation, TERCICA, INC., a Delaware Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> INSMED INCORPORATED, a Virginia Corporation, CELTRIX PHARMACEUTICALS, INC., a Delaware Corporation, INSMED THERAPEUTICS PROTEINS, INC., a Colorado Corporation, <br><br> Defendants. | Case No. C-04-5429 (CW) |

**THIRD EXPERT REPORT OF DR. ALLYN D. STRICKLAND**

**I.   INTRODUCTION**

1.  My name is Allyn D. Strickland and I am a Managing Director at Huron Consulting Group ("Huron"), an operational and financial consulting firm. Huron provides consulting services to private and government clients, including the analysis of damages issues raised in litigation and arbitration proceedings. I have been retained in this lawsuit on behalf of defendants Insmed Incorporated ("Insmed Inc."), Celtrix Pharmaceuticals, Inc. ("Celtrix") and Insmed

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Therapeutics Proteins, Inc. (collectively, "Insmed"). My hourly billing rate on this matter is $525, and the compensation received by Huron is not dependent on the outcome of this lawsuit.

2. On February 24, 2006 I submitted a report that addressed damage issues arising from the patent infringement claims of plaintiffs Genentech, Inc. ("Genentech") and Tercica, Inc. ("Tercica").[1] On November 20, 2006, I testified at trial on the amount of reasonable royalty damages assuming that Insmed's iPlex™ infringed one or more valid Genentech patents.

3. I also submitted a report on December 20, 2006 that addressed economic issues that would be raised if Tercica requested a permanent injunction to prevent Insmed from selling iPlex™ in the U.S.[2] I concluded then that:

    a.    It is not likely that Tercica will suffer irreparable harm if Insmed continues selling iPlex™.

    b.    Monetary damages are adequate to compensate Tercica for potential damages arising from Insmed's continued sale of iPlex™.

    c.    Insmed will suffer more financial hardship if a permanent injunction is granted than Tercica would suffer if one is not granted.

4. Genentech and Tercica filed a motion on December 22, 2006, requesting, among other things, a permanent injunction to prevent Insmed from "making or selling IPLEX™ for commercial use as a treatment for Severe Primary Insulin-Like Growth Factor Deficiency" ("IGFD").[3] Since that motion

---

[1] "Expert Report of Dr. Allyn D. Strickland" ("Strickland Report"), February 24, 2006.
[2] The "Second Expert Report of Dr. Allyn D. Strickland" ("Second Strickland Report"), December 20, 2006 addressed issues raised in the "Third Expert Report of Jerry A. Hausman, Ph.D." ("Third Hausman Report"), October 16, 2006. This third report incorporates the economic analysis and opinions presented in my first two reports (Strickland Report and Second Strickland Report).
[3] "Plaintiffs' Notice Of Motions and Motions For (A) Permanent Injunction; (B) Enhanced Damages; and (C) Exceptional Case" ("Plaintiffs' Motions"), December 22, 2006, p. 6.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

was filed, Genentech, Tercica and Insmed have produced documents relevant to Tercica's request for a permanent injunction.[4] These new documents provide additional support for the conclusions that I reached in my second report, and are discussed in the section below.[5]

## II. REVIEW OF NEW DOCUMENTS

5. In my second report, I concluded that it was not likely that Tercica will suffer irreparable injury and that "Insmed's iPlex™ sales, and hence possible financial impact on Tercica" will be "limited for several reasons."[6] One reason is that "Increlex™ has a significant price advantage compared to iPlex™."[7]

**Redacted**

6. I also concluded that it was unlikely that "Insmed's sales of its higher priced iPlex™ will lower Tercica's price for Increlex™, leading to price erosion."[9] I had not "seen any evidence of price erosion," and, moreover, concluded, "this is not a market situation in which an economist would expect there to be price erosion."[10] That is still the case.

**Redacted**

---

[4] My staff and I reviewed the following documents: (1) Genentech documents GTI 035 0000001 – 10, GTI 036 0000001 – 39, GTI 037 0000001 and GTI 038 0000001 - 65; (2) Tercica documents T00155568 - T00156038; and (3) Insmed documents INSM0727794 - INSM0741625.
[5] These documents also support conclusions presented in my first report.
[6] Second Strickland Report, p. 8.
[7] Second Strickland Report, p 8. **Redacted**
[9] Second Strickland Report, p. 9.
[10] Second Strickland Report, p. 9.

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Redacted**

7.  I also noted in my second report that Tercica believed its "major competitor" was growth hormone.[11]

**Redacted**

Tercica's attorneys, on the other hand, adopted the opposite position at trial, claiming in closing arguments that it is "Totally wrong" to say that "Anybody that sells the growth hormone would also be competitors" of Tercica and Insmed.[13]

8.  I also discussed the likely market expanding effect of Insmed's sale of iPlex™.

**Redacted**

---

[11] Second Strickland Report, p. 10.

**Redacted**

[13] Trial Transcript, pp. 2174-5.
[14] Second Strickland Report, pp. 11-2.

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

9.

**Redacted**

10. Finally, I concluded in my second report, partly because of Tercica's "transformative" collaboration agreement with Ipsen, that a "permanent injunction which will prevent Insmed from selling iPlex™ will have a substantially more negative financial impact on Insmed, than continued iPlex™ sales would have on Tercica."[16]

**Redacted**

---

[15]

**Redacted**

[16] Second Strickland Report, pp. 14-9.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Redacted**

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 18th day of January 2007 in Washington, D.C.

*/s/ Allyn D. Strickland*

Dr. Allyn D. Strickland

---

[17] Second Strickland Report, p. 6.